STORIE *v.* STATE OF INDIANA.

[No. 270S17. Filed June 10, 1970.]

*John F. Branham, Gordon, Glenn, Miller, Bendall & Branham,* of Huntington, for appellant.

*Theodore L. Sendak,* Attorney General, *R. Michael Bruney,* Deputy Attorney General, for appellee.

ARTERBURN, J.—This is an appeal from a conviction for second degree burglary. The jury returned its verdict finding the appellant guilty as charged.

The nature of the issues presented necessitates a summary of the pertinent facts. In the early morning hours of April 1, 1969, the Huntington police responded to a telephone call from a person who resided across the street from Riordan's Market. She stated that she heard what she thought was a

window being broken. When she looked out the window of her residence she saw a car and then saw someone enter the back door of the store. The caller testified that after notifying the police she continued to observe the activity at the store and saw a man make repeated trips, taking large cartons out of the store and placing them in the parked car.

The police arrived at the store in two cars, one at the front of the store and one at the rear. Captain Crago proceeded to the front of the store where he shined his flashlight inside. As he did so he saw the appellant inside the store. Crago then spotted another man in the store who started to run to the back of the store, followed by the appellant. Appellant and his companion (Larkey) were captured by the officers who had arrived at the rear of the store. These officers testified that as they approached the rear of the store in their car they saw appellant's companion get out of an automobile and run into the store. The door to the store was found to have a large pane of glass broken out. An investigation of the interior of the store disclosed that beer, meat and cigarettes had been removed. The car parked by the rear of the store had both doors open and the engine running. Large amounts of groceries, beer cases, meat and cigarettes were found therein. These items were identified as being from the store.

It is first said that the trial court erred in overruling defense counsel's objection to certain questions posed to the appellant by the prosecutor upon cross-examination. It is argued that the questions were "immaterial to the question of defendant's guilt or innocence and could serve no purpose and have no effect except to prejudice the jury . . ." Preliminarily, we note that the trial court has a wide latitude in ruling on matters concerning the extent of cross-examination of a defendant. It's discretion will not be interfered with unless it has been abused. *Swift* v. *State* (1961), 242 Ind. 87, 176 N. E. 2d 117. There exists an obvious reason why appellant's argument must fail. It is

fundamental that where a particular subject matter was covered on direct examination it is properly within the scope of cross-examination. *Swift* v. *State, supra.* The question objected to and the trial court's ruling thereon during the cross-examination of the appellant were as follows:

"Q  I think that you testified that you've known Larry Larkey for five years, is that right?

"A  Somewhere around five is what I said.

"Q  Good friends?

"A  Not good friends all the time.

"Q  Did you say you became good friends somewhere along the line?

"A  Yes.

"Q  When was that? How long ago was that?

"A  About six or eight months ago.

"Q  Six or eight months ago?

"A  Yes.

"Q  And did you continue to be good friends on up to the present time?

"A  As far as I am concerned, yes.

"Q  You knew, did you, that six or eight months ago that he had a criminal record?

"MR. GOLLEHON: I'm going to object, your Honor, as to what Larkey had as a criminal record—I don't think that is material in this cause here.

"JUDGE ADE: This man's knowledge goes to his friendship with him. Objection is overruled. You brought it out that he was a friend of Mr. Larkey's.

"MR. GOLLEHON: Yes, but then that doesn't create a—this witness here—I don't think—

"JUDGE ADE: Objection is overruled.

"MR. GOLLEHON: All right.

"JUDGE ADE: You may answer the question.

"Q  You may answer the question.

"A  Repeat it again.

"Q  Did you know that he had a criminal record eight months ago when you became good friends?

"A  I knew he had been to Boys School—yes.

"Q To be what?

"A To Boys School.

"Q I have no further questions."

This line of questioning was tied directly to the testimony elicited from the appellant on direct examination. On direct examination the following transpired:

"Q I'll withdraw the question, your Honor. I'll withdraw it. How long have you known Mr. Larkey that was in your home at the time you were doing this drinking?

"A I'd say about five years.

"Q Five years? Is he any relative of yours?

"A No, sir.

"Q Is there any other association other than your friendship that exists with your family?

"A He's always been my friend. He used to go with my sister.

"Q Used to go with your sister? He doesn't do that now or anymore, is that correct?

"A I don't think so.

"Q *Well, he's been confined in the Reformatory now, has he not?*

"A No, he don't—no.

"Q No what?

"A He don't date her now then since he's down there. He don't—

"Q *Well, prior to the time that he went to the reformatory, did—was he going with your sister at that time?*

"A Yes." (Emphasis Added)

In view of these circumstances, where the very matter objected to was opened up on direct examination, we find no error in the trial court's ruling.

It was incumbent upon the State to prove each of the following material elements of burglary in the second degree:

"(1) a breaking,

"(2) an entering,

"(3) of a building or structure other than a dwelling-house or place of human habitation,

"(4) coupled with intent to commit felony in such building or structure." *Lee* v. *State* (1968), 250 Ind. 64, 235 N. E. 2d 67.

It is argued by the appellant that the evidence is insufficient to sustain the jury's verdict and that the trial court erred in overruling his motion, at the close of the State's case, to instruct the jury to return a verdict of not guilty. Appellant argues there is no proof of intent to commit a felony.

We conclude that the evidence is overwhelmingly in support of the jury's finding that appellant entered the store with intent to commit a felony. The testimony establishes that entrance was gained by breaking a window in a side door. The neighbor testified that she saw two men by the store and observed merchandise being carried from the store to the car. Testimony further established that appellant was observed inside the store and eventually captured inside the store, crouched behind a meat counter; that the car was loaded, both front and rear, with groceries, beer, cigarettes and meat taken from the store and that the car doors were open and the engine was running. The question of intent was a question to be resolved by the jury from all the evidence. *Hunter* v. *State* (1965), 246 Ind. 494, 207 N. E. 2d 207. In view of this clear and convincing evidence we are led to conclude that the verdict is more than amply sustained by evidence of probative value and all reasonable inferences to be drawn therefrom.

Appellant's reliance upon *Easton* v. *State* (1967), 248 Ind. 338, 228 N. E. 2d 6 and *Crawford* v. *State* (1968), 251 Ind. 437, 241 N. E. 2d 795 is misplaced. In *Easton, supra,* the defendant had forcibly entered an apartment and was found seated watching television. We reversed conviction for first degree burlary, holding that the evidence did not support any proof of entering to commit a felony. Here the facts

are obviously more conclusive. A felony was actually in the process of being committed. Likewise, the evidence in this case establishing a breaking and entering and the commission of a felony makes *Crawford, supra,* inapplicable.

It is lastly argued that, at the time of the events under consideration, the appellant was intoxicated to such a degree as to render him incapable of entertaining the required intent to commit a felony. Intoxication is a complete defense only when it's degree is such as to render the accused incapable of entertaining the specific intent required. *Yarber* v. *State* (1962), 242 Ind. 616, 179 N. E. 2d 882. Appellant testified that he was intoxicated to the point that he had no recollection of the events which led to his ultimate conviction. However, appellant's testimony in this regard is discredited by other evidence. The arresting officers testified that they were close enough to appellant to touch him and could not detect the odor of alcohol, nor did appellant respond or walk as if he were intoxicated. The officers testified that in their opinion the appellant was not intoxicated at the time of his arrest. One further fact lends support to our conclusion that appellant, if intoxicated at all, was not intoxicated to the degree that he was incapable of forming the required intent. When appellant was placed in the police car subsequent to his arrest, Captain Crago, who had approached the store from the front, shined his flashlight into the squad car. In response the appellant stated, "Crago, get that damned light out of my eyes, you know who I am." This indicates the state of appellant's alertness. The extent of his intoxication did not interfere with his ability to recognize and converse with Captain Crago. See *Hunter* v. *State* (1965), 246 Ind. 494, 207 N. E. 2d 207. Finally, appellant was sufficiently aware of his unlawful activities to make an attempt to escape and later to conceal himself behind the meat counter to avoid arrest.

Judgment affirmed.

Hunter, C.J., Givan and DeBruler, JJ., concur; Jackson, J., concurs in result.

NOTE.—Reported in 258 N. E. 2d 849.