PHILLIP D. JESTER *v.* STATE OF INDIANA.

[No. 3-274A30. Filed January 16, 1975. Rehearing denied February 27, 1975.]

*Robert W. Miller,* of Elkhart, for appellant.

*Theodore L. Sendak,* Attorney General, *Gary M. Crist,* Deputy Attorney General, for appellee.

GARRARD, J.—Phillip Jester was convicted by the court on a charge of assault and battery with intent to commit the felony of rape. He was subsequently committed to the custody of the Indiana Department of Mental Health as a criminal sexual deviate.

His appeal questions the sufficiency of the evidence to establish either intent to rape or his sanity. He also asserts error in a question propounded to him on cross examination, and in the sustaining of an objection propounded to a medical witness. We conclude the evidence was sufficient and no reversible error was committed.

The evidence most favorable to the state establishes that on December 12, 1972, Jester entered a laundromat in Elkhart, Indiana. After washing some clothing, he approached a female employee of the business who was the only other person there. He threatened to kill her unless she did as he demanded, and when she looked down, she saw that he had pulled a knife.

Jester ordered her to remove her clothing, and when she pleaded with him, he tore her blouse off. The witness could not recall exactly what happened next, but affirmed she had been completely disrobed. Jester attempted to force her into a back room, but she was able to trip an automatic lock that prevented their entry. During the course of these happenings he "touched" her breasts and hips. Jester then threatened to kill her if she did not commit fellatio upon him.

At this point she saw a truck turning into the alley by the laundromat. She managed to run toward the door. The trucker saw her, stopped and came to her aid.

Jester's first argument is that the evidence was insufficient to establish any intent on his part to rape the victim. He urges that because he did not verbalize any desire for intercourse, and because of his own testimony that he had never had sexual intercourse, no intent to rape could be inferred.

We disagree. While Jester was entitled to present this theory to the trier of fact, the events described are sufficient to establish the reasonable inference that his intent included having intercourse with the victim against her will. On cross examination, he conceded the possibility that at least in the absence of all the struggling and screaming that occurred, he would have desired to have intercourse with her. There is no suggestion that he was incapable of having intercourse. Accordingly, Jester's argument becomes merely an assertion that we should reweigh the evidence. *Byassee* v. *State* (1968), 251 Ind. 114, 239 N.E.2d 586. This we may not do. *Hash* v. *State* (1973), 259 Ind. 683, 291 N.E.2d 367.

Jester's assertion that the evidence was insufficient to establish his sanity fails for the same reason. Once the issue of sanity becomes a question for the trier of fact, our review of the determination is limited to ascertaining whether there was substantial evidence of probative value to support the determination. *Dragon* v. *State* (1974), 262 Ind. 394, 316 N.E.2d 827.

Dr. Yuhn, a qualified psychiatrist appointed by the court to examine Jester, testified that in his opinion Jester was sane and met the requirements for legal sanity adopted in *Hill* v. *State* (1969), 252 Ind. 601, 251 N.E.2d 429. Also, the truck driver testified to Jester's efforts to escape by first attempting to mislead the driver into believing the perpetrator was someone else, and then by attempting to flee. There was clearly probative evidence to support the finding. *Dragon, supra.*

On direct examination Jester was asked if he intended to have intercourse with the victim and he professed no such intent. He was then asked on cross examination whether he would have had, or would have wanted to have had intercourse with the victim if she hadn't screamed and struggled so much. Objection was made that the question called for a conclusion, and that what Jester would have done under other circumstances was not an issue.

At issue was Jester's intent; and the intent that was precisely relevant was his intent when he committed the assault and battery, rather than what it may have been after he encountered the victim's resistance. See, e.g. *Stephens* v. *State* (1886), 107 Ind. 185, 8 N.E. 94. On direct examination Jester's counsel had elicited a general denial of an intent to rape. On cross examination the prosecution was entitled to question whether Jester might have originally intended to rape and changed his mind only after he met substantial resistance. The question posed was designed to explore Jester's intent before he met the extent of resistance offered by his intended victim. It was within the ambit of proper cross examination. *Sears* v. *State* (1972), 258 Ind. 561, 282 N.E.2d 807.

Dr. Yuhn testified to his examination of Jester and that in his opinion, Jester knew what he was doing was wrong and that he had substantial capacity to conform his conduct to the requirements of the law. During extensive cross examination he stated that in his opinion, Jester was schizophrenic, and that his motivation to commit the offense came from his emotional disturbance, but that he nevertheless knew what he did was wrong and that he could have controlled his conduct. He also gave his opinion that there are numerous ambulatory schizophrenics; that they may make judgmental decisions despite their problems; but that their symptoms may also be exacerbated and they may lose the ability to make proper judgments. He stated, however, that he had examined Jester two different times, about five months apart, and felt Jester could control his conduct. In this context he was then asked if he thought Jester should be institutionalized, and he replied "yes".

The final error urged by Jester is that the court sustained the state's objection when counsel then asked why Dr. Yuhn thought Jester should be institutionalized.[1] While this inquiry could have been permitted, its relevance at that point went to

---

1. Counsel then passed the witness.

the reliability of the doctor's opinion rather than to the direct issue of insanity. The witness had already given his medical opinion of sanity several times, had conceded he felt Jester should be institutionalized, and had been extensively examined as to the effects of schizophrenia. Under these circumstances, the court did not abuse its discretion in sustaining the objection. *Pinkston* v. *State* (1972), 258 Ind. 672, 284 N.E.2d 767.

The judgment is affirmed.

Staton, P.J. and Hoffman, J., concur.