CHARLES RICHARDSON v. STATE OF INDIANA.

[No. 3-1274A209. Filed August 12, 1976.]

*Sheldon H. Cohan,* of Gary, for appellant.

*Theodore L. Sendak,* Attorney General, *John R. O'Bryan,* Deputy Attorney General, for appellee.

HOFFMAN, J.—Appellant Charles Richardson entered a plea of not guilty by reason of insanity to a charge of second degree burglary.[1] Trial was to a jury which returned a verdict of guilty as charged, and judgment was entered thereon. Richardson contends on appeal that:

1. There was insufficient evidence to prove beyond a reasonable doubt that he was sane at the time of the offense;

2. There was insufficient evidence to prove that he was capable of forming the required criminal intent; and

3. The trial court erred in failing to hold a competency hearing *sua sponte* on the issue of his competence to stand trial.

We conclude that there was sufficient evidence to prove that Richardson was sane at the time of the offense; that he was capable of forming the requisite intent; and that the trial court did not err in failing to hold a competency hearing.

---

1. IC 1971, 35-13-4-4(b) (Burns Supp. 1976).

## INSANITY

When a criminal defendant properly raises the defense of insanity, the State must prove beyond a reasonable doubt that defendant was sane at the time of the offense. *Johnson* v. *State* (1970), 255 Ind. 324, 264 N.E.2d 57; *Fitch* v. *State* (1974), 160 Ind. App. 697, 313 N.E.2d 548.

The law in Indiana is that a person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. The terms "mental disease or defect" do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct. *Hill* v. *State* (1969), 252 Ind. 601, 251 N.E.2d 429.

The question of sanity is a question of fact. We may not weigh the evidence or determine the credibility of the witnesses, but must look to the evidence and the inferences most favorable to the State to determine if there is evidence to support the jury's finding of sanity. *Wilson* v. *State* (1975), 263 Ind. 469, 333 N.E.2d 755; *Blake* v. *State* (1975), 262 Ind. 659, 323 N.E.2d 227; *Stamper* v. *State* (1973), 260 Ind. 211, 294 N.E.2d 609; *Fitch* v. *State, supra.*

The facts most favorable to the State contained in the record establish beyond a reasonable doubt that Richardson was sane at the time of the offense. The offense was committed on March 27, 1973. The two psychiatrists who testified at trial examined Richardson during the fall of 1973,[2] and again during the trial, and neither of them could form an opinion as to whether Richardson was sane at the time of the offense. Such inconclusiveness

---

2. Dr. Hogle initially examined Richardson to determine his competence to stand trial. Dr. Dian examined Richardson while he was a patient at Norman Beatty Memorial Hospital.

on the part of expert witnesses, however, is not dispositive of the sanity issue, in view of the principle that lay testimony is proper on such an issue and may be credited over that of expert witnesses. *Wilson* v. *State, supra; Blake* v. *State, supra; Hill* v. *State, supra; Fitch* v. *State, supra.*

The trier of fact may consider all the facts of defendant's life relevant to the issue of insanity, including the acts of the crime charged. *Lynn* v. *State* (1971), 255 Ind. 631, 266 N.E.2d 8; *Fitch* v. *State, supra.*

Dr. August Dian testified that he was of the opinion that Richardson had attempted to feign mental illness on occasion. Dr. Frank Hogle testified that, if he had addressed the question of Richardson's sanity at the time of the offense during his first interview with him, he would have concluded that Richardson was probably sane at the time of the offense.

Bernard Austin, the manager of the burglarized office, stated that prior to the burglary Richardson had come to the office seeking temporary employment. One or two temporary labor assignments per week had been completed by Richardson in the year prior to the burglary. Bernard Austin further testified that Richardson could comprehend working instructions. Dr. Hogle testified that these facts could indicate sanity.

The arresting police officer testified that Richardson tried to hide from the police in an effort to avoid capture. His evasive actions tended to show that he was aware of the wrongfulness of his conduct. *Jester* v. *State* (1975), 163 Ind. App. 24, 321 N.E.2d 762; *Fitch* v. *State, supra.* Later, about ten hours after the burglary, Richardson was interrogated. He gave a lucid confession relating his participation in the burglary and admitted his attempt to hide from the police. Dr. Hogle stated that such evasive actions and confession could lend some weight to a finding of sanity.

The evidence and the reasonable inferences therefrom were sufficient to enable the jury to find Richardson sane at the time of the offense.

CRIMINAL INTENT

The crime of second degree burglary as delineated by IC 1971, 35-13-4-4(b) (Burns Supp. 1976),[3] requires a specific intent:

"Whoever breaks and enters into * * * any building or structure other than a dwelling house or place of human habitation, with the intent to commit a felony therein, shall be guilty of burglary in the second degree, * * *."

The questions of the existence of such intent and of whether appellant had sufficient mental capacity to form such intent are questions of fact to be resolved by the jury from all the evidence. *Storie* v. *State* (1970), 254 Ind. 301, 258 N.E.2d 849; *Hill* v. *State, supra.*

Although Dr. Dian testified that Richardson has a low intelligence, almost retarded, Bernard Austin testified that Richardson could comprehend instructions and could complete temporary labor assignments. Furthermore, the interrogating police officer testified that Richardson gave a lucid account of his participation in the burglary. Mental weakness has long been rejected as a defense to a criminal prosecution. *Hill* v. *State, supra; Hashfield* v. *State* (1965), 247 Ind. 95, 210 N.E.2d 429, *cert. denied,* 384 U.S. 921, 86 S.Ct. 1373, 16 L.Ed.2d 442; *Robinson* v. *The State* (1888), 113 Ind. 510, 16 N.E. 184. From the evidence presented, the jury could have concluded that Richardson's level of intelligence did not render him incapable of forming a criminal intent.

Richardson stated that he had consumed a portion of a bottle of wine immediately prior to the burglary. The law on voluntary intoxication was recently restated in *Watson* v. *State* (1975), 165 Ind. App. 111, 330 N.E.2d 781, at 784:

"While voluntary intoxication is not a defense in a criminal proceeding, it is, nevertheless, well recognized that the

---

3. IC 1971, 35-13-4-4(b) (Burns Supp. 1976), has been twice amended since the occurrence of the crime of which the appellant was convicted. However, neither of such amendments are germane to this appeal.

absence of a specific intent, regardless of the cause of such mental state, is a defense to any crime requiring such an intent. To this extent, mental incapacity, although occasioned by the voluntary ingestion of alcohol or drugs, is a defense. The existence of this mental condition or incapacity, rendering the accused incapable of forming a specific intent, is a question of fact to be determined by the trier thereof—in this case, the jury. *Stout* v. *State* (1974), 262 Ind. 538, 319 N.E.2d 123; *Preston* v. *State* (1972), 259 Ind. 353, 287 N.E.2d 347; *Daniels* v. *State* (1971), 257 Ind. 376, 274 N.E.2d 702."

Dr. Dian testified that Richardson had been drinking for about twenty-five years and, recently, his drinking became excessive. The arresting officer testified that he smelled alcohol in the burglarized office, but he could not tell if the odor emanated from Richardson or from the other participant in the offense. The officer testified that Richardson's speech was not slurred and that he did not appear to be stumbling. The jury could have concluded from the evidence presented that Richardson's consumption of a portion of a bottle of wine did not render him incapable of forming the requisite intent, in light of his twenty-five-year history of drinking.

## COMPETENCY HEARING

The defense rested after the presentation of the State's case-in-chief. Because appellant had entered a special plea of not guilty by reason of insanity, the trial court then called as witnesses Dr. Dian and Dr. Hogle, the two psychiatrists who had been appointed to examine Richardson pursuant to IC 1971, 35-5-2-2 (Burns Code Ed.). Both doctors had also examined Richardson during the morning of the final day of trial. Neither could form an opinion as to Richardson's sanity on the date of the offense, but both formed opinions as to Richardson's competence to stand trial.

Dr. Dian testified that Richardson was then legally sane. Dr. Hogle reached a contrary conclusion. Later, when Dr.

Hogle was examined by the defense, he reiterated such opinion.

Richardson contends on appeal that the testimony of Dr. Hogle was sufficient to require the trial judge to hold a competency hearing pursuant to IC 1971, 35-5-3.1-1 (Burns Code Ed.), which provides, in pertinent part, as follows:

> "Hearing to determine defendant's sanity during trial. —When at any time before the final submission of any criminal cause to the court or jury trying the same, the court, either from its own knowledge or upon the suggestion of any person, has reasonable ground for believing the defendant to be insane, the court shall immediately fix a time for a hearing to determine the question of the defendant's sanity and shall appoint two [2] competent disinterested physicians who shall examine the defendant upon the question of his sanity and testify concerning the same at the hearing. At the hearing, other evidence may be introduced to prove the defendant's sanity or insanity. If the court shall find that the defendant has comprehension sufficient to understand the nature of the criminal action against him and the proceedings thereon and to make his defense, the trial shall not be delayed or continued on the ground of the alleged insanity of the defendant. If the court shall find that the defendant has no comprehension sufficient to understand the proceedings and make his defense, the trial shall be delayed or continued on the ground of the alleged insanity of the defendant. * * *."[4]

The criminal trial of a defendant while he is mentally incompetent to understand the proceedings or to participate in his defense violates fundamental due process. *Tinsley, et al.* v. *State* (1973), 260 Ind. 577, 298 N.E.2d 429.

If the statements of Dr. Hogle were "sufficient indicators" to create a "reasonable ground" for the trial court to believe Richardson to be incompetent to stand trial, the trial court's failure to hold a hearing deprived Richardson of his constitutional right to a fair trial. *See, Tinsley* v. *State, supra,* and cases cited therein.

---

4. IC 1971, 35-5-3.1-1 (Burns Code Ed.), became effective March 1, 1974. It replaced IC 1971, 35-5-3-2, Ind. Ann. Stat. § 9-1706a (Burns 1956). However, the grounds for holding a competency hearing were not changed.

However, it is apparent upon even the most cursory consideration of the language and purposes of IC 1971, 35-5-3.1-1, *supra*, that the trial judge must possess a discretion thereunder to determine whether "sufficient indicators" of a "reasonable ground" to doubt defendant's sanity have come to light during trial. Our Supreme Court reached this same conclusion upon considering this statute in the case of *Harris* v. *State* (1974), 262 Ind. 208, 314 N.E.2d 45, at 48, therein stating:

> "The question, then, becomes one of *weighing the evidence*. Was it an *abuse of discretion* for the trial judge to think that no 'reasonable ground' to doubt defendant's competency had appeared? In making such an inquiry, we must remember that we are here concerned with *competency*, the ability to aid in one's defense, Pate v. Robinson, supra, [(1966), 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815], which is not necessarily identical to or contemporaneous with that legal insanity which prevents the imputation of criminal responsibility." (Emphasis added in part.)

Similarly, in the recent case of *Brown* v. *State* (1976), 264 Ind. 484, at 487, 346 N.E.2d 559, at 560, our Supreme Court unanimously held:

> "The right to such a hearing is not absolute or automatic but is dependent upon the presence of reasonable cause to suspect that the defendant is incompetent to stand trial. It is obvious that in view of the report of Doctor Smith, *the trial judge concluded* that there was no reasonable ground for believing the defendant to be insane or incompetent to stand trial, and under these circumstances, *he was not required to hold the hearing contemplated under the statute.*" (Emphasis added.)

Thus, it must be concluded that IC 1971, 35-5-3.1-1, *supra*, confers a discretion upon the trial court to determine when a reasonable ground exists for believing a defendant to be insane. As stated by this court in *Preuss* v. *McWilliams* (1967), 141 Ind. App. 602, at 606-07, 230 N.E.2d 789, at 792:

> "The term 'discretion' implies the absence of a hard and fast rule or a mandatory procedure regardless of varying

circumstances. 'Discretion' of a court is a privilege allowed a judge within the confines of justice to decide and act in accordance with what is fair and equitable. Thus, judicial action which involves discretion is final and cannot be set aside on appeal except when there is an abuse of discretion."

As to what constitutes an abuse of discretion, this court stated in *Guraly* v. *Tenta, et al.* (1956), 126 Ind. App. 527, at 531, 132 N.E.2d 725, at 727 (transfer denied) :

"An abuse of discretion, reviewable on appeal, is an erroneous conclusion and judgment, one clearly against the logic and effect of the facts before the court or against reasonable, probable and actual deductions to be drawn therefrom. *Bailin* v. *Bailin* (1944), 223 Ind. 7, 57 N.E.2d 436."

In the case at bar, as in *Harris* v. *State, supra,* the evidence in the record must be examined to determine if the trial court abused its discretion in concluding that no reasonable ground existed to doubt appellant's competency to stand trial. The issue is not whether *this* court may conclude that a "reasonable ground" to doubt appellant's sanity existed, but whether the appellant has demonstrated that the trial court abused its discretion in concluding that a *reasonable* ground did not exist to doubt appellant's ability to assist in his defense and comprehend the proceedings. *Harris* v. *State, supra.*

The record of this cause does not reveal that either the appellant or his attorney ever asserted to the trial court during trial that the appellant was incompetent to stand trial. This fact is most significant, because the same counsel who represented appellant during trial had, subsequent to appellant's arrest, advised the court that he had reason to believe that appellant was incompetent to stand trial.[5] Such advisement resulted in appellant's commitment to Norman Beatty Me-

---

5. While no waiver of this issue may be presumed on these facts due to the existence of an issue as to appellant's sanity, the fact that no assertion of incompetency was made is, upon these facts, a circumstance bearing on the trial court's decision not to hold a competency hearing. *See, Harris* v. *State* (1974), 262 Ind. 208, 314 N.E.2d 45, 49.

morial Hospital. The record also establishes that Richardson was later certified as competent to stand trial in mid-January of 1974, and that the trial was actually commenced on August 1, 1974.

As stated hereinabove, no issue was raised or became self-evident during appellant's trial as to his competency. The statement which appellant contends gave rise to a "reasonable ground" to doubt his competency to stand trial occurred during the testimony of one of two psychiatrists called by the court as witnesses on the subject of appellant's sanity at the time of the crime. Such witnesses were called by the trial court after both the State and defense had rested.

The first psychiatrist who testified stated that appellant was his patient during appellant's commitment to Norman Beatty Memorial Hospital prior to trial, that he talked with appellant daily during such commitment period, and had talked with him prior to testifying that day, and that appellant was then competent to stand trial. Dr. Hogle, the other psychiatrist who testified, stated that he had examined appellant only once prior to trial, that the date of such examination was about one year prior to trial, and that appellant was fully competent to stand trial at such time. However, Dr. Hogle also stated that he had examined appellant prior to testifying that day, that appellant appeared "preoccupied" and would not reveal information about his past, and that appellant was then incompetent to stand trial. Additionally, it must be remembered that the trial judge had the opportunity to observe appellant's conduct during the course of his trial, and was in a far better position than is this court to determine the credibility of the testimony of Dr. Hogle.

The foregoing facts and circumstances do not establish that the decision of the trial court on this issue was *clearly* against the logic and effect of the facts then before it. The trial court, after a consideration of the demeanor of Dr. Hogle, Dr. Hogle's opportunity to observe ap-

pellant, and the other facts pointing to appellant's competency, may have properly concluded in its discretion that under the circumstances Dr. Hogle's statement did not give rise to a *reasonable* ground to doubt appellant's competency. The appellant has not shown that the trial court abused its discretion.

No reversible error having been shown, the judgment of the trial court must be affirmed.

Judgment affirmed.

Garrard, J., concurs; Staton, P.J., dissents with opinion.

## DISSENTING OPINION

STATON, P.J.—I dissent to the majority's disposition of Issue Three. The trial court should have held a competency hearing before determining that Richardson was competent. The proper question for our review is not abuse of discretion, a question of fact. It is whether there is evidence of a reasonable doubt of Richardson's competency in the record to initiate a competency hearing, a question of law. I would remand this cause to the trial court for a competency hearing to assure a fair trial.

### I.

#### *Abuse of Discretion*

A competency hearing is not discretionary under IC 1971, 35-5-3.1-1 (Burns Code Ed.) It is mandatory "[w]hen at any time before the final submission of any criminal cause to the court or jury trying the same, the court, either from its own knowledge or upon the suggestion of any person, has reasonable ground for believing the defendant to be insane. . . ."

When a trial court fails to order a competency hearing, our review is limited to the presence or absence of reasonable grounds for ordering a competency hearing—not an abuse of discretion. Any exercise of discretion on the part of the trial court must come after the competency hearing when the de-

termination of the defendant's competency is made. At the competency hearing, the trial court weighs the evidence, assesses the credibilty of the witnesses, and while using its discretion, it makes a determination as to competency. Otherwise, the statute is meaningless.

If a trial court could exercise its discretion in determining the competency of a defendant without a hearing after the suggestion of any person (a psychiatrist in Richardson's case), the statute would be an absurdity.

If there is evidence of a reasonable doubt, the reasonable doubt creates the need for a competency hearing. It does not create the need for an immediate determination of competency without a hearing. The trial court's discretion is exercised at the competency hearing—not upon the reasonable doubt which is a matter of law by statute.

"Under the rule of Pate v. Robinson (1966), 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, a due process evidentiary hearing is constitutionally compelled at any time that there is 'substantial evidence' that the defendant may be mentally incompetent to stand trial. 'Substantial evidence' is a term of art. 'Evidence' encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is 'substantial' if it raises a reasonable doubt about the defendant's competency to stand trial. *Once there is such evidence from any source, there is a doubt that cannot be dispelled by resort to conflicting evidence.* The function of the trial court in applying *Pate's* substantial evidence test is not to determine the ultimate issue: Is the defendant competent to stand trial? It [*sic*] sole function is to decide whether there is any evidence which, assuming its truth, raises a reasonable doubt about the defendant's competency. At any time that such evidence appears, the trial court *sua sponte* must order an evidentiary hearing on the competency issue. It is only after the evidentiary hearing, applying the usual rules appropriate to trial, that the court decides the issue of competency of the defendant to stand trial." *Moore* v. *United States* (9th Cir. 1972), 464 F.2d 663, 666.

The question before this Court is whether there was sufficient evidence before the trial court to raise a reasonable ground to doubt Richardson's competency. This is a question of law—not a question of fact. As Justice Prentice pointed out in his dissenting opinion in *Harris* v. *State* (1974), 262 Ind. 208, 314 N.E.2d 45, 51:

> "I do not agree with the test applied by the majority opinion with respect to whether to hold a competency hearing. The issue before us on appeal is not whether there was 'sufficient evidence [for the trial judge] to find that the defendant had sufficient comprehension to stand trial,'[1] but rather whether the trial court had before it 'indicators sufficient to establish reasonable grounds to believe the defendant to be legally incompetent.' Evans v. State (1973), [261] Ind. [148], 300 N.E.2d 882; Tinsley v. State (1973), [260] Ind. [577], 298 N.E.2d 429. (footnote omitted)

> "So long as the evidence before the court raises a 'bona fide doubt' as to a defendant's competence to stand trial, the judge on his own motion must conduct a competency hearing pursuant to Burns Ind. Stat. Ann. § 9-1706a, IC 35-5-3-2. Pate v. Robinson (1966), 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815.

> "The trial judge, therefore, has much less discretion with respect to refusing to grant a competency hearing than he does in determining competency at a hearing. If this Court determines that there were sufficient indicators to establish a bona fide doubt as to defendant's competency, the failure to grant a competency hearing is error."

Also, the majority's opinion's reliance on *Brown* v. *State* (1976), 264 Ind. 484, 346 N.E.2d 559 and on *Harris* v. *State, supra,* as establishing an abuse of discretion standard of appellate review is misplaced. There was no mention of an abuse of discretion standard in *Brown* v. *State, supra*. Additionally, it was clear in *Brown* that there was no evidence before the trial court that the defendant was incompetent to stand trial. Clearly the trial court was not required to hold the competency hearing required by IC 1971, 35-5-3.1-1 in that case. Although Justice Arterburn, joined by Justice Givan, in *Harris* v. *State, supra,* concluded the review of the appellate court was for an

abuse of discretion, Harris is not a decisive opinion. Justice DeBruler only concurred in result and Justices Prentice and Hunter dissented on the ground that the majority opinion applied the wrong test regarding the issue of whether the trial judge should have held a competency hearing.

## II.

### Reasonable Ground to Believe

Richardson had raised the defense of insanity. The question of his sanity at the time of the offense is a question of fact. *Wilson* v. *State* (1975), 263 Ind. 469, 333 N.E.2d 755; *Blake* v. *State* (1975), 262 Ind. 659, 323 N.E.2d 227; *Stamper* v. *State* (1973), 260 Ind. 211, 294 N.E.2d 609. After the State and Richardson had rested, the trial court called Dr. Dian and Dr. Hogle to testify. They were psychiatrists who had been appointed by the trial court to examine Richardson. Dr. Dian testified that in his opinion Richardson understood the current proceedings and was capable of aiding in his defense. Dr. Hogle then testified as follows:

"Q. Do you have an opinion as to his present competency to stand trial?

"A. Yes, the difference is [*sic*] that I noted in Mr. Richardson, between the initial examination in September of '73 and the present time were so striking that I in fact did not recognize him and identified him to be sure that I was talking with the same man, in addition to asking his name, I asked his age which coincided with the age he had given me before. I also, without giving him any leading questions, asked him as to what charge he was standing trial on and since the answers to these three (3) questions coincided and I also asked him if he recalled seeing me and in a kind of way he said he did, and I did best conclude that I was examining the same individual. He however looked strikingly different when I examined him previously, he was neat, clean and reasonably well dressed, as well as one is possible out of the Lake County Jail. He was coherent, relevant and when I saw him today he was almost wholly preoccupied with how it was that people had and were misleading him. This preoccupation was so severe and so constant that I was able to obtain no information regarding

his past. And was unable to reach any conclusion as to what his mental status had been in the past. And it's my opinion that at the time Mr. Richardson is incompetent to stand trial.

"Q. Do you have an opinion as to the defendants sanity today?

"A. Yes, according to—of course there are kind of two (2) definitions from a psychiatric standpoint. I believe that Mr. Richardson is today psychotic and I believe that from a legal standpoint that he is insane."

Later, when Dr. Hogle was examined by the defense, he re-iterated his opinion:

"Q. You had the opportunity to see him an hour and a half ago, the immediate time and place and that is your opinion?

"A. That he is, at this time, I believe, at this time to be insane."

The testimony of Dr. Hogle was clearly sufficient to raise a reasonable ground to doubt Richardson's competence to stand trial. The trial court was also aware that Richardson had been previously found incompetent to stand trial in October 1973 and had been confined in Norman Beatty Memorial Hospital. Later the hospital, not the court, certified in January, 1974 that Richardson was competent to stand trial. This certification was more than six months before trial.

I do not agree with the majority's conclusion that it was for the trial court to determine the credibility of the testimony of Dr. Hogle. This is a determination that must be made at the competency hearing. The fact that Dr. Hogle's testimony was directly contradicted by the testimony of Dr. Dian cannot negate the "reasonable ground to doubt" created by Dr. Hogle's testimony. Once a reasonable ground to doubt is shown to exist by some evidence, the trial court may not weigh conflicting evidence nor judge the credibility of the witnesses to dispel this doubt. See *Moore* v. *United States, supra.*

The testimony of Dr. Hogle raised a reasonable ground to doubt Richardson's competency to stand trial and when this

doubt arose, the trial court was mandated by IC 1971, 35-5-3.1-1 to hold a hearing to determine Richardson's competence.

I would remand this cause to the trial court for a separate, independent, and objective determination of Richardson's competency to stand trial. See *Evans* v. *State* (1973), 261 Ind. 148, 300 N.E.2d 882; *Tinsley* v. *State* (1973), 260 Ind. 577, 298 N.E.2d 429; *Schmidt* v. *State* (1974), 159 Ind. App. 412, 307 N.E.2d 484.

NOTE.—Reported at 351 N.E.2d 904.