JIMMIE LEE WILLIAMS *v.* STATE OF INDIANA

[No. 2-778A228. Filed October 30, 1978. Rehearing denied April 5, 1979. Transfer denied July 10, 1979.]

*Robert Graves*, of Marion, for appellant.

*Theodore L. Sendak,* Attorney General of Indiana, *William E. Daily,* Assistant Attorney General, for appellee.

CHIPMAN, P.J.—Jimmie Lee Williams (appellant-defendant) was convicted by a jury of commission of a crime while armed with a deadly weapon.[1] He was sentenced to ten years on January 31, 1978, and raises the following questions on appeal:

(1) Was there sufficient evidence to establish Williams' sanity at the time of the crime?

(2) Should the trial court have given credit for the time served prior to sentencing?

Both questions are answered in the affirmative and therefore we affirm, but remand this cause for modification of the sentence to reflect credit for time served prior to sentencing.

ISSUE I:    Sufficiency of Evidence as to Sanity

Williams timely claimed that he was insane at the time of the commission of the offense on October 3, 1973. The state, therefore, was charged with the duty of proving beyond a reasonable doubt that he was sane at that time. *Stamper v. State* (1973), 260 Ind. 211, 294 N.E.2d 609; *Johnson v. State* (1970), 255 Ind. 324, 264 N.E.2d 57; *Fitch v. State* (1974), 160 Ind.App. 697, 313 N.E.2d 548. The trier of fact, in this case the jury, must be convinced that the defendant was sane when he committed the crime and if they are not then they must acquit. *Limp v. State* (1950), 228 Ind. 361, 92 N.E.2d 549; *Freese v. State* (1903), 159 Ind. 597, 65 N.E. 915.

We do not weigh the evidence, but we look to the record to determine if there was sufficient evidence to support the verdict as to the question of sanity.

Williams and two juveniles, on the day of the offense, drove around in the defendant's automobile and talked of robbing the M & G Package Store (M & G) in Marion, Indiana. Williams and either one or both of

---

1.    IC 1971, 35-12-1-1 (Burns Code Ed.). Repealed October 1, 1977. (See IC 35-42-5-1).

the juveniles then entered M & G and took, at gun point, Ninety-six Dollars ($96.00) belonging to M & G Package Store, Inc.

Ralph Pierce, the clerk of M & G, testified that Williams entered the store behind two juveniles. After entering, the defendant stood near the cash register, thought a while as to what he wanted and then asked for a half pint of Seagrams gin. One of the juveniles pulled a gun and said "this is a hold up." Williams then took the gun and told Pierce to "put the money in a bag and keep your hands above the counter." After doing as he was instructed, the clerk was told by Williams to go around to the front of the counter and lay down on the floor. Williams and the two juveniles then left the store, got in the defendant's car and drove away with Williams as the driver.

Officer Lobdell of the Marion Police Department testified that he knew all three of the participants involved in the crime and further that he saw Williams leaving the store with a revolver and a brown paper bag in his hands. The officer determined by his radio that the Marion City Police Department had been alerted by an alarm system from M & G and therefore pursued Williams' automobile in his unmarked police car. A high speed chase ensued with speeds reaching 65-70 miles per hour. Another officer of the Marion Police Department attempted a road block, but both Williams and Officer Lobdell were able to avoid being stopped.

While being chased, Williams tried to give the revolver to both the juveniles and told them to shoot at Lobdell's vehicle. Both juveniles refused, so Williams then started firing from his window with at least one bullet lodging in the radiator of the police car. Lobdell finally was able to utilize a short cut and successfully rammed Williams' automobile, focring it from the highway. Williams and the two juveniles then fled and temporarily escaped apprehension.

The defendant was later taken into custody at his mother's residence. As he was being taken away by the police, he asked his mother to try to get him a lawyer.

Since Williams has put his sanity at the time of the offense in question, we need to determine what criteria are applied to arriving at a conclusion as to his sanity. Our Supreme Court adopted section 4.01 of the Model Penal Code in *Hill v. State* (1969), 252 Ind. 601, 251 N.E.2d 429. In that opinion the court held that a person

is not responsible for criminal conduct if at the time of such conduct, as a result of mental disease or defect, he lacks substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

In the case at bar, the two medical experts were unable to form an opinion as to Williams' mental condition on the date of the offense. The jury, however, could properly consider lay testimony and determine from the evidence submitted, the question as to the defendant's sanity. The evidence established that Williams and two juveniles discussed robbing M & G and then carried out this plan. Williams participated by ordering a half pint of gin, taking the gun from the juvenile, ordering the clerk to put the money in a paper bag, and to then lay on the floor. Williams then drove the getaway car in an attempt to elude the police officer by driving at a high rate of speed through various streets in the City of Marion, Indiana, and, in addition, he was successful in avoiding a police road block. He even fired several shots at the squad car driven by Officer Lobdell. After his automobile was rammed by the police car, he then ran and was eventually arrested at his mother's home. Williams, after this arrest, then asked his mother to "get an attorney." These facts and the reasonable inferences which the jury could draw from the evidence submitted was sufficient to conclude that although Williams had mental problems he still could "appreciate the wrongfulness of his conduct" or could "conform his conduct to the requirements of the law." *Richardson v. State* (1976), 170 Ind.App. 212, 351 N.E.2d 904. The verdict of the jury and the judgment of the court are affirmed.

ISSUE II:   Credit for the Time Served

The record shows that Williams was incarcerated from October 9, 1973, until October 25, 1974, a period of one year and seventeen days, at which time he escaped. He was returned to court on January 11, 1978, and sentenced by the court to ten years without credit for time served prior to the sentencing. It is assumed that the escape of Williams after the jury's verdict and before sentencing had motivated the court in disallowing credit for time served prior to sentencing.

IC 35-8-2.5-1 reads as follows:

Credit for time served before sentencing. — When sentencing any

person convicted of a crime the sentencing court *shall* order that the sentenced person to be given credit toward service of his sentence for any days spent in confinement as a result of the criminal charge for which sentence is imposed or as a result of the conduct on which such charge is based. The court *shall* specify in its order of commitment the number of days credit to which the person sentenced is entitled pursuant to this section. (emphasis added)

In accordance with this statute the trial court did not have discretion concerning crediting of time previously served regardless of the fact that Williams escaped. *See Brown v. State* (1975), 262 Ind. 629, 322 N.E.2d 708.

This cause is now remanded for correction of the sentence to include credit for the time served from October 9, 1973, until October 25, 1974. Otherwise the judgment is affirmed.

Garrard, P.J. concurs.

Hoffman, J. concurs.

NOTE—Reported at 381 N.E.2d 1256.