Michael LEAVELL, Appellant
(Defendant Below)

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2–178A1.

Court of Appeals of Indiana,
Second District.

June 18, 1979.

Harriette Bailey Conn, Public Defender, Indianapolis, for defendant-appellant.

Theo. L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., for plaintiff-appellee.

SHIELDS, Judge.

Leavell was charged with Commission of a Felony While Armed, to wit, Robbery. IC 35–12–1–1 (Burns Code Ed. 1975) He was convicted as charged and sentenced to a determinate term of ten (10) years imprisonment.[1]

His appeal presents two issues for review: (1) whether there was sufficient evidence linking him to the armed robbery; and (2) whether the trial court erred in ordering that he not be given any good time credit for his presentence confinement. We affirm Leavell's conviction, but remand the case for correction of part of the judgment.

I

SUFFICIENCY OF THE EVIDENCE

Citing *Gaddis v. State*, (1968) 253 Ind. 73, 251 N.E.2d 658, Leavell argues that the victim's in-court identification was so tainted by an overly suggestive pretrial photographic display that the testimony had no probative value.

According to the victim's testimony at trial, the robbery occurred during daylight hours and must have taken at least several minutes to complete. The perpetrator, who did not wear a mask, stood for some time no more than an arm's length away from the victim.

■ Where, as here, the victim had ample opportunity to observe his assailant, there exists a sufficient basis, independent of any pretrial photographic identification, to support his unequivocal in-court identification. *Emerson v. State*, (1972) 259 Ind. 399, 287 N.E.2d 867.

Nor was the pretrial photographic display unnecessarily suggestive. A few days after the robbery, the victim viewed a display of photographs at the police station. He went through a series of mug books, but was unable to identify any of the photographs. Then, as the police officer was going through a drawer of additional mugshots, several photographs fell out. One of the photographs was of Leavell, which photograph the victim identified as being that of the person who had robbed him at gunpoint.

■■ Although it is better practice not to use mugshots, or at least to cover any police identification markings on them if used, there is no strict rule against the display of such photographs to witnesses. In determining the suggestiveness of a photographic display, the totality of the circumstances surrounding the display should be considered and the nature of the photographs is only one of the factors to be considered. *Whitt v. State*, (1977) Ind., 361 N.E.2d 913.

■ Here, Leavell's mugshot photograph was shown along with other mugshot photographs. In view of that fact, and also the fact that Leavell's photograph was displayed fortuitously, we find that the pretrial photographic display was not unnecessarily suggestive.

1. Leavell was charged, tried, and convicted before the new Criminal Code went into effect.

■ Leavell's related challenge to the testimony of Anderson Freshwater, an admitted accomplice who served time for his participation in the armed robbery, is also without merit. Although Freshwater apparently agreed to testify in order to get out of prison and was subsequently released on shock probation, such evidence was before the jury to consider in evaluating Freshwater's overall credibility. It is the trier of fact's function, not ours, to weigh the evidence and determine the credibility of witnesses. *Downing v. State*, (1978) Ind. App., 381 N.E.2d 554.

■ Contrary to Leavell's claim, therefore, the record discloses ample evidence from which the jury could have inferred that he was the perpetrator.

## II
## CREDIT FOR GOOD TIME CONDUCT

Following the jury verdict, the trial court sentenced Leavell to imprisonment for a determinate term of ten (10) years. The trial court also entered two related orders under IC 35–8–2.5–1 et seq. (Burns Code Ed. 1975) concerning the credit Leavell was to receive for his presentence confinement.

IC 35–8–2.5–1 requires that an individual be given credit toward service of his sentence for any days spent in confinement on that charge prior to sentencing.[2] *See also, Williams v. State*, (1978) Ind.App., 381 N.E.2d 1256. Pursuant to IC 35–8–2.5–3 which deals specifically with determinate sentences,[3] the trial court ordered that Leavell be given credit toward service of his sentence for the 300 days he spent in presentence confinement.

2. IC 35–8–2.5–1 reads as follows:
   Credit for time served before sentencing.—When sentencing any person convicted of a crime the sentencing court shall order that the sentenced person be given credit toward service of his sentence for any days spent in confinement as a result of the criminal charge for which sentence is imposed or as a result of the conduct on which such charge is based. The court shall specify in its order of commitment the number of days credit to which the person sentenced is entitled pursuant to this section.

3. IC 35–8–2.5–3 provides:
   Credit for time served—Determinate sentence.—Whenever a person is sentenced to a

■ The trial court's second order, which is the one we are concerned with here, involved Leavell's good time allowance under IC 35–8–2.5–5. By statute, an individual may earn a diminution of time from his sentence in the form of a "good time" allowance. Good time is earned at varying rates up to a maximum of thirty (30) days a month, depending upon the individual's time earning class. See, IC 11–7–6.1–1 et seq. (Burns Code Ed. 1977 Supp.).[4] The trial court specifically ordered that Leavell not be given any good time allowance for the 300 days he spent in confinement prior to sentencing.[5] Leavell maintains that the trial court had no authority to enter a binding order in this regard.

■ IC 35–8–2.5–5, the statute under which the trial court was proceeding, provides:

Credit for time served—Good time allowance.—Whenever a person has been given credit pursuant to section 1 [35–8–2.5–1] of this chapter, any good time allowances to which such person is entitled under the laws of this state shall be computed as if the time for which credit has been allowed had been served after the sentence was imposed and in the place of confinement designated in such sentence or order of commitment. The sentencing judge shall make recommendations as to credit for good time conduct for time spent in confinement prior to sentencing.

A plain reading of this statute indicates that the sentencing judge only has the authority to make *recommendations* with re-

determinate period of confinement in a penal institution or facility in this state, any time credit to which he is entitled pursuant to section 1 [35–8–2.5–1] of this chapter shall be subtracted from such determinate period.

4. These are the applicable good time provisions. Leavell was charged, tried, and convicted before the new Criminal Code went into effect.

5. Leavell's presentence report indicates that he escaped from jail and was later recaptured.

spect to good time allowances.[6]  The trial judge cannot, as was done here, enter a binding order and thereby circumvent the procedure specified by IC 11–7–6.1–1 et seq.

IC 11–7–6.1–1 et seq. contains the following provisions:

11–7–6.1–1.  Definitions [Repealed effective October 1, 1977].—As used in this chapter [11–7–6.1–1—11–7–6.1–8] unless otherwise provided:

(a) "Inmate" means those persons who are either actually within the walls of the various state correctional institutions or upon the grounds thereof, or are elsewhere working or under the control of the department of correction including, but not limited to, those persons on work release, academic and vocational study release, and temporary leaves.  The term shall not be applicable to any person who has been released on parole or placed on probation.

(b) "Good time" means earned diminution of time from the sentence as provided in section 2[11–7–6.1–2] of this chapter and is to be earned only while the person is an inmate in a state correctional institution.

(c) "Time earning class" means any one (1) of the four (4) categories to which an inmate may be assigned according to his conduct and performance, each category offering a different rate of good time accumulation for each individual month of sentence served.

(d) "Director" means the director of the division of classification and treatment created by IC 1971, 11–1–1.1–24, [IC 1971, 11–7–6.1–1, as added by Acts 1974, P.L. 43, § 1, p. 181.]

11–7–6.1–2.  Classification of inmates—Schedule of good time earned [Repealed effective October 1, 1977].— Every inmate who is now or hereafter may be confined, upon conviction of a felony, in a correctional institution under the supervision of the Indiana department of correction, except those inmates under sentence of death or life imprisonment, shall at all times during such confinement be assigned to one (1) of the following four (4) time earning classes and shall be entitled to a diminution of time from his or her sentence as indicated in the following table for the respective months of his or her sentence, prorated for any part of a month, including time being served for unpaid fines or costs. Class assignments shall be made in accordance with the procedure provided in this chapter [11–7–6.1–1—11–7–6.1–8]. This good time shall apply both toward an inmate's discharge date and his parole eligibility date.

| TIME EARNING CLASSES OF GOOD TIME | RATE OF GOOD TIME DIMINUTION FROM EACH INDIVIDUAL MONTH OF SENTENCE WHILE IN CONFINEMENT |
|---|---|
| Class one (1) | Thirty (30) days |
| Class two (2) | Twenty (20) days |
| Class three (3) | Ten (10) days |
| Class four (4) | Zero (0) days |

[IC 1971, 11–7–6.1–2, as added by Acts 1974, P.L. 43, § 1, p. 181.]

11–7–6.1–3.  Classification of inmates—Procedure—Criteria—Records— Powers of director of division [Repealed effective October 1, 1977].—The director of the division of classification and treatment shall have the power and duty to:

(a) develop and implement an efficient and impartial procedure for evaluating inmates and classifying them into the four (4) time earning classes created by this chapter [11–7–6.1–1—11–7–6.1–8]. This procedure shall include the formulation of criteria for each individual class and the level of performance necessary for advancement to a higher time earning class.  Criteria for class composition shall be devised so that each class will reflect a different level of performance based on, but not limited to, an inmate's conduct record, work and/or instructional program reports, involvement in rehabilitative programs, willingness and ability to accept responsibility, and cooperative attitude;

---

**6.**  With regard to the construction of Indiana statutes, IC 1–1–4–1(1) Burns Code Ed. 1978 Supp.) provides that "[w]ords and phrases shall be taken in their plain, or ordinary and usual, sense."

(b) keep an accurate and complete record of all good time earned by an inmate, including a record of his time earning class at all times during his confinement and a record of any good time taken away from and restored to an inmate;

(c) facilitate the institution of the diminution of sentence procedure provided by this chapter by classifying all inmates now confined in the appropriate institutions according to the criteria formulated under subsection (a) of this section into three (3) classifications: Class two (2), class three (3) and class four (4). Subsequent reclassification shall be made in accordance with the procedure provided in this chapter;

(d) exercise all powers necessary and proper to promote the efficient and impartial administration of this chapter, including the adoption of rules not inconsistent with law as he may deem proper and necessary with respect to such administration. [IC 1971, 11–7–6.1–3, as added by Acts 1974, P.L. 43, § 1, p. 181.]

11–7–6.1–4. Classification of new inmate [Repealed effective October 1, 1977].—Whenever an inmate entitled to a diminution of time from his or her sentence is received into the department of correction, such inmate shall automatically be assigned to class two (2). Subsequent reclassification shall be made in accordance with the procedure provided in this chapter [11–7–6.1–1—11–7–6.1–8]. [IC 1971, 11–7–6.1–4, as added by Acts 1974, P.L. 43, § 1, p. 181.]

11–7–6.1–5. Regular review of classifications—Recommendations—Reclassification—Prerequisite for class one [Repealed effective October 1, 1977].—The classification committee or other appropriate institutional committee or board designated by the director shall review the institutional record of all inmates assigned to class two (2), class three (3), and class four (4) at least every six (6) months and recommend to the head of such correctional institution either promotion of such inmate to a higher time earning class or retention of such inmate in his or her current classification for an addition-

al six (6) months. The institutional head will make the final determination on the decision to promote or retain. Provided, however, That any inmate retained in the same time earning class for a period greater than twelve (12) months shall, upon his or her request, have the right to a review of this decision by the director. An inmate shall be eligible for promotion to class one (1) only after serving six (6) consecutive months in class two (2). [IC 1971, 11–7–6.1–5, as added by Acts 1974, P.L. 43, § 1, p. 181.]

11–7–6.1–6. Demotion to lower class—Grounds—Hearing committee—Report—Hearing [Repealed effective October 1, 1977].—An appropriate institutional hearing committee, to be designated by the director, may, from time to time, recommend to the head of that correctional institution demotion of an inmate to a lower time earning class. Such recommendation shall be in writing and shall be substantiated by a conduct report showing such inmate has been found guilty of violating a department of correction rule or regulation, a work or instructional program report indicating that the inmate is not performing at a level commensurate with his or her current time earning class, or any other appropriate report indicating that such inmate is unable or unwilling to maintain that level of performance necessary to remain in his or her current time earning class. The institutional head shall make a recommendation to the director of classification, who shall make the final determination on the decision to demote or retain. Provided, however, That said hearing committee shall not forward such a recommendation without first providing the inmate with a copy of the written report on which such recommendation is based and providing said inmate with an impartial hearing where the inmate has an opportunity to appear and speak in his or her behalf, to have witnesses testify in his or her behalf, and to confront and cross-examine witnesses supporting the demotion. [IC 1971, 11–7–6.1–6, as added by Acts 1974, P.L. 43, § 1, p. 181.]

11–7–6.1–7. Depriving inmate of good time—Grounds—Notice—Hearing—Review of decision—Restoration [Repealed effective October 1, 1977].—In case any inmate entitled to a diminution of sentence, as herein provided, shall violate any of the rules and regulations of the department of correction; and the institutional hearing committee referred to in section 6 [11–7–6.1–6] determines that such violation is of such grievous nature that demotion to class four (4) would not be sufficient disciplinary action therefor, such committee is hereby empowered to deprive such inmate of any portion or all of the good time earned as it may, in its discretion, determine to be sufficient disciplinary action for said violation. Such deprivation shall be in conjunction with, and not in lieu of, a demotion to class four (4).

No inmate shall be deprived of any good time earned unless he or she has been given written notice of the fact that such deprivation is contemplated, an impartial hearing where the inmate has an opportunity to appear and speak in his or her behalf, request that witnesses be called or interviewed, and confront and cross-examine witnesses supporting the deprivation, the assistance of a lay advocate (limited to another inmate in the same institution who is not then in segregation) if he or she so desires, a written statement of the committee's findings, and, if he or she so requests, an administrative review of the committee's decision by the commissioner of correction.

Such good time taken away may thereafter be restored by the commissioner of correction, whenever he deems there is sufficient and justifiable cause to do so.

Such good time taken away and the right to earn good time may thereafter be restored by either the institution head or the director, subject to the approval of the commissioner of correction, whenever it is deemed there is sufficient and justifiable cause to do so. [IC 1971, 11–7–6.1–7, as added by Acts 1974, P.L. 43, § 1, p. 181.]

11–7–6.1–8. Good time earned under prior law [Repealed effective October 1, 1977].—Nothing in this chapter [11–7–6.1–1—11–7–6.1–8] shall deprive an inmate of any good time earned under the diminution of sentence statutes in effect on February 18, 1974. [IC 1971, 11–7–6.1–8, as added by Acts 1974, P.L. 43, § 1, p. 181; 1975, P.L. 119, § 1, p. 747.]

■ According to IC 35–8–2.5–5, the individual, once sentenced, is treated as though he had been an "inmate" during the period of his presentence confinement for the purpose of applying the statutory good time provisions. See, IC 11–7–6.1–1(b). Hence, good time is initially earned at the rate specified by the Class II time earning class. If there is to be any reclassification, IC 11–7–6.1–4 provides that the subsequent reclassification must be made in accordance with statutorily prescribed procedures. IC 11–7–6.1–5 calls for periodic reviews of the time earning class assignment. IC 11–7–6.1–6 and 11–7–6.1–7, respectively, prescribe the procedures for demoting an inmate to a lower time earning class and for depriving him of good time previously earned.

■ The statutory scheme vests authority in various correctional officials to make these determinations. To assist in the decision-making process, the sentencing judge who is charged with the responsibility of making good time recommendations for individuals confined prior to sentencing might accompany his recommendation with an explanation of the reasons therefor. If, as in this case for example, the trial judge feels that the individual's conduct during presentence detention warrants a deprivation of good time that he otherwise would be credited with, the trial judge should consider accompanying his recommendation to that effect with specific information indicating the exact nature and extent of the conduct. Such information would assist the officials at the correctional institution to which the individual is assigned in determining whether the conduct is so egregious as to warrant the more severe disciplinary action. For individuals confined longer than six months prior to sentencing, the trial court

should include recommendations concerning reclassification in accordance with the statutory mandate that an "inmate" be reevaluated every six months.

In summary, we conclude that IC 35–8–2.5–5 must be read in conjunction with IC 11–7–6.1–1 et seq. IC 35–8–2.5–5 only gives the sentencing judge the authority to make *recommendations* concerning good time allowances. The decision whether or not to implement the trial court's recommendation is then made in accordance with the procedure specified by IC 11–7–6.1–1 et seq.

Therefore, we affirm Leavell's conviction, but remand the case with an order to the trial court to correct the judgment of sentencing in accordance with this opinion.

BUCHANAN, C. J., and SULLIVAN, J., concur.