## MAX BAYER *v.* STATE OF INDIANA.

[No. 2-1072A66. Filed November 20, 1973.]

*Herbert W. Johnson, Jr.,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *John McArdle,* Deputy Attorney General, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Appellant-Defendant Max Bayer (Bayer) appeals from convictions on counts of first degree burglary and robbery, alleging improper conduct on the part of the trial judge and prosecutor, and that the evidence was insufficient to sustain his conviction.

We affirm.

## FACTS

The facts and evidence most favorable to the state and the judgment of the trial court are:

On the evening of January 29, 1971, Bayer, Kenny Taylor and Charles Flora drove to the home of one William Goins at 3830 Aurora in Indianapolis. They had previously paid $1,000 to the proprietor of Bob's Safe & Lock Company in exchange for a tip that Goins kept a large amount of money in his home. When Goins answered their knock, the three forced their way into the home, knocking him to the floor and holding him while they began searching the house.

Masks were worn only by Taylor and Flora.

Soon after the men arrived at the house, Stella Brummett, Goins' daughter, who lived in a neighboring house, stopped by to check on her father who was in ill health. She was forced into the home and told by Bayer that if she identified him to the police, he would kill both her and her father.

All three men carried guns. Mrs. Brummett was in the same room with Bayer for a half-hour before she was tied up and a pillow case pulled over her face. In all, the three men were at the Goins' house for almost an hour. During that time, one of them went next door and took some articles from Mrs. Brummett's house and automobile. Among the articles taken from Goins' home were a box of blank checks and a loaded .32 calibre Colt revolver.

After the three intruders had been at the Goins' residence about an hour, Mr. Goins "faked" a heart attack, and the three men left promising to call a rescue squad to assist him. The police arrived at the home at 9:25 p.m. that night.

They exhibited between twenty and thirty photographs to Goins and Mrs. Brummett, but no identification was made at this time. Several days later, two groups of pictures were shown to them. Mr. Goins recognized Bayer's picture and stated that he looked like one of the robbers. Mrs. Brummett recognized Bayer's picture as one of the robbers, but did not identify him to the police because she was afraid that he would make good his threat and kill her father.

In the fall of 1971, Flora was arrested in connection with another robbery, and gave a statement admitting participation in the Goins robbery and implicating Bayer therein. A representative of the Marion County Sheriff's Department met with Mrs. Brummett in December of 1971 and showed her 25 pictures of white males in Bayer's age group, among which was a picture of Bayer. In the interval of time since the robbery, Goins had died and Mrs. Brummett was no longer fearful. She positively identified Bayer as the man who had worn no mask during the robbery.

Bayer was charged by affidavit with first degree burglary and robbery, and tried before a jury in Criminal Court Three of Marion County on March 23, 1972.

As the trial commenced, the following statement was made by the judge:

*Court:* Good morning ladies and gentlemen. *We are here this morning on a jury calendar for the Defendant Max Bayer. CR 72-53C and CR 72-54C.* Show the Defendant here in person and by his attorney, Herb Johnson. The State is here by Mr. Tipton. Mr. Tipton having noted in the case files that the *State has filed an election as to which cases to proceed on, this matter now comes on for trial in CR 72-54C.* Is the Defendant, Max Bayer ready for trial? (emphasis supplied)

Bayer immediately objected to any of the jurors present being called as jurors in his case, because the judge had indicated that Bayer had two cases pending against him. His objection was overruled and the trial proceeded.

During the trial Flora testified as a State's witness against Bayer and, along with Mrs. Brummett, confirmed the events as outlined above.

When the defense cross-examined Mrs. Brummett, the defense counsel first brought out that Goins and Mrs. Brummett had been shown photographs of Bayer by the police soon after the crime. These pictures were among several others used by the police for identification purposes.

When Lt. Tandy, the police officer who had first investigated the incident, was being questioned by the prosecution regarding these photographs shown to Mrs. Brummett, this exchange occurred:

*Prosecutor:*

Q. All right, now, did you at any time show a photograph of the Defendant, Max Bayer, to either Mrs. Brummett or Mr. Goins?

A. Yes sir, we showed a picture, I don't remember what— I think a 1963 picture to them the night—out there.

*We carried a picture of him in our mug file.* (Emphasis supplied)

Q. Did Mrs. Brummett identify him?

A. No sir.

Q. Did Mr. Goins?

A. Mr. Goins said it resembled one of—

*Mr. Johnson:* Your honor, we have an objection at this time and wish that that last answer be stricken for the purpose of making an objection and we would like to make our objection out of the presence of the jury.

After the jury was excused, defense counsel moved for a mistrial on the grounds that the statement that Bayer's picture was in a "mug file" was highly prejudicial, because it denoted prior criminal activity which was unconnected with the crime for which he was being tried.

Bayer's motion to strike was granted, his motion for a mistrial was denied, and the parties agreed that to admonish the jury would only serve to reinforce their memory of the objectionable phrase.

Certain leading questions were objected to by the defense and eventually the defense sought an admonishment of the prosecutor, which was granted. The questions may be characterized as being objectionable in form only. For example, "were any of these men wearing gloves?" was resubmitted after objection as "What, if anything, did you observe about these men's hands?"

Defense testimony was limited to alibi evidence. Daphine Bayer, Bayer's wife, testified that they had been together on the evening of January 29. (Although the Bayers were not married until July, they were living together at the time of the robbery.)

The jury returned a verdict of guilty on both counts, and on April 17, 1972, Bayer was sentenced to serve 10 to 20 years on each conviction.

Bayer raises four issues as his grounds for appeal from his conviction below.

## ISSUES

ISSUE ONE.

Did the trial court err in refusing to dismiss jurors who were present in the courtroom when the judge inadvertently referred to two cause numbers in calling Bayer's case?

ISSUE TWO.

Was testimony by a police officer as to the presence of a picture of Bayer in the police "mug file" cause for granting a mistrial?

ISSUE THREE.

Did questioning of the State's witnesses by the Prosecutor prevent Bayer from obtaining a fair trial?

ISSUE FOUR.

Was there sufficient evidence to prove that "an article of value" had been taken during the robbery?

As to ISSUE ONE, Bayer argues that the statement by the trial court notified jurors that more than one charge was pending against him; thus his character was challenged prior to his taking the stand.

The State answers that the trial court judge's statement was not so explicit that jurors would necessarily infer from it that Bayer was accused of more than one crime. Further, State contends, any error in this case was harmless as the evidence against Bayer was overwhelming.

As to ISSUE TWO, Bayer argues that the use of the word "mug file" constituted an evidentiary harpoon, and required reversal because it was evident that the defendant had a criminal record.

The State answers that use of the term "mug file" was not conclusive as to the existence of a criminal record. Further, the statement was only harmless error.

As to ISSUE THREE, Bayer argues that the questions asked by the prosecuting attorney forced defense counsel to make numerous objections, thereby influencing the jury and prejudicing them against the defendant.

The State answers that defense counsel was likewise guilty of asking numerous improper questions, and that the conduct of questioning is a matter within the discretion of the trial court.

As to ISSUE FOUR, Bayer contends that while no specific value need be shown, the robbery statute requires that *some* evidence of value must be shown, and, he contends, no such showing was made by the prosecution at trial.

The State answers that there was sufficient evidence from which a reasonable inference of value could be drawn, and further argues that "an article of value" is a qualitative and not a quantitative test.

## DECISION

ISSUE ONE.

CONCLUSION—It is our opinion that the trial court did not err in refusing to dismiss jurors who were present in the courtroom when the judge inadvertently referred to two cause numbers in calling Bayer's case.

On the morning of Bayer's jury trial the trial judge inadvertently referred to two cause numbers (CR 72-53C and CR 72-54C) and observed that the State had elected to proceed to trial on CR 72-54C. Bayer's objection is that his character was put in question prejudicing his right to receive a fair trial.

As we interpret his excellent brief the thrust of his argument is that this alleged error coupled with the "evidential

harpoon" considered under Issue Two requires reversal. This portion of his argument will be considered in Issue Two.

If Bayer's argument is interpreted that standing alone the reference to two cause numbers is so prejudicial as to require reversal he presents no authority for this position.

Bayer concedes that the reference to two cause numbers by the trial judge was unintentional. Furthermore he makes no showing that any of the jurors who eventually served on the jury were among those prospective seated in the room and overheard the judge's remarks. Also, there is nothing in the record to indicate that Bayer pursued his objections in the voir dire questioning of the prospective jurors or that he sought any rectification by an admonishment by the trial judge to ignore the reference to the other cause number.

The inadvertent reference to two cause numbers by the trial judge was at worst an ambiguous statement. To un-initiated jurors the reference could refer to the fact that he was charged with both robbery and burglary.

It could mean that Bayer was charged with an additional crime. It could have some other meaning relating to crimininal procedure unknown to the jurors.

The record indicates that later in the trial defense counsel during cross examination elicited testimony as to other possible criminal activities by Bayer which might have resulted in an additional charge against him. The defense introduced a police crime report which showed that three men, (Bayer included) removed property belonging to Mrs. Brummett from her home next door to the Goins house. Although the second theft occurred contemporaneously with the first, the property stolen was from a different victim and would be considered by the jury as a basis for the reference to the two cause numbers. This could have a mitigating effect upon any prejudice arising out of the judge's statement.

Whatever its meaning to the jury, the ambiguity and un-

certainty of the reference to a second cause number standing alone did not place him in a position of grave peril or so prejudice his right to a fair trial that a mistrial should have been granted.

ISSUE TWO

CONCLUSION—It is our opinion that testimony by a police officer as to the presence of a picture of Bayer in the police "mug file" was improper, but constituted harmless error under the circumstances.

The subject of "evidential harpoons" has been much treated.

One of the leading cases is *White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312. In *White,* a police officer was put on the stand by the prosecution solely for the purpose of testifying that he had arrested White previously. One emerges from a careful reading of *White* with the firm conviction that *intent* to prejudice is a prime consideration in determining whether a given improper statement constitutes reversible error.

In support of its decision, the Supreme Court in *White* emphasized prior cases to the effect that the objectionable material "was obviously calculated to persuade the jury," (*Rohlfing* v. *State* (1951), 230 Ind. 236, 241, 102 N.E.2d 199) or that "The purpose of their exhibition before the jury is evident," (*Derry* v. *State* (1932), 204 Ind. 21, 25, 182 N.E. 701). The court also distinguished *Duke* v. *State* (1968), 249 Ind. 466, 233 N.E.2d 159 on the grounds that in *Duke* ". . ., there was no indication that the erroneous testimony, although given by a police officer, was deliberately intended to be prejudicial . . ." 272 N.E.2d at 319.

Justice Prentice on behalf of a unanimous court, analyzed these considerations in determining whether "the error placed him [a defendant] in a position of grave peril to which he should not have been subjected":

1. The effect of constitutional provisions, statutes or rules relating to harmless error.
2. The degree of materiality of the testimony.
3. Other evidence of guilt.
4. Other evidence tending to prove the same fact.
5. Other evidence that may cure the improper testimony.
6. Possible waiver by the injured party.
7. Whether the statement was volunteered by the witness and whether there had been deliberate action on the part of the prosecution to present the matter to the jury.
8. The penalty assessed.
9. Whether or not the testimony, although volunteered by the witness, was in part brought out by action of the defendant or his counsel.
10. The existence of other errors.
11. Whether the question of guilt is close or clear and compelling.
12. The standing and experience of the person giving the objectionable testimony.
13. Whether or not the objectionable testimony or misconduct was repeated.

Recent Supreme Court cases have consistently followed the criteria announced in *White*. In *Bonds* v. *State* (1972), 258 Ind. 241, 280 N.E.2d 313, a police officer gave a non-responsive answer indicating that he had arrested the defendant previously, and it was held that any error could not be attributed to an intentional act of the prosecutor.

> An attempt by the prosecutor to introduce a "mug shot" of the defendant into evidence has been held not to constitute reversible error.

". . . We will not hesitate, in a proper case, to order a mistrial for misconduct of counsel prejudicing or likely to prejudice the rights of the accused. *White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312.

"The determination, however, generally lies within the sound discretion of the trial court and will not be lightly disturbed upon appeal. The trial judge noted that the defendant had opened the door to the proffered evidence by his cross examination and further that the prosecutor had held the exhibit at great care to avoid exposure to the jury and that, in his opinion, it was unlikely that the jury

could have been improperly influenced. We here find neither the deliberate misconduct indicated by the record in *White* v. *State supra* nor the imperiled position of the defendant that prompted our reversal in that case." *Baynard* v. *State* (1972), 259 Ind. 336, 339, 286 N.E.2d 844, 845-846.

But the acceptance of an actual "mug shot" photograph into evidence may constitute reversible error. See *Blue* v. *State* (1968), 250 Ind. 249, 235 N.E.2d 471; *Vaughn* v. *State* (1939), 215 Ind. 142, 19 N.E.2d 239. Such photographs may be admissible, however, where they are "relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit a crime." *Dirring* v. *United States* (1st Cir. 1964), 328 F. 2d 512, cert. denied 377 U.S. 1003, rehearing denied 379 U.S. 874.

Two recent decisions in other districts of this court have decided that the use by a witness of the term "mug shot" does not constitute reversible error. See *Moore* v. *State* (1973), 156 Ind. App. 687, 298 N.E.2d 17, and *Angel* v. *State* (1973), 155 Ind. App. 242, 292 N.E.2d 268.

Applying the standards of *White*, it is apparent that Mrs. Brummett and Flora each gave clear, convincing and consistent testimony identifying Bayer as one of the robbers. There was no deliberate action on the part of the prosecution to bring out the words "mug file." No mug shot was actually produced or offered in evidence. The prosecution made no attempt whatsoever to refer to or reintroduce the objectionable phrase. There is no showing of intent or design on the part of the prosecution to prejudice Bayer.

Unlike the police officer in *White* who was placed on the stand for the sole purpose of asking a damaging question, Lt. Tandy was the investigating officer and gave relevant testimony concerning the robbery at the Goins' household.

Perhaps as important to our decision as the absence of a

deliberate attempt to prejudice is the fact that the "door way" was first opened by the defense. The defense on cross examination established that the police officers carried Bayer's picture in a group with several others and showed them to victims of armed robberies. When this file was eventually and inadvertently referred to as a "mug file", it was not a startling revelation of a new and material fact.

Lack of intent to prejudice, other strong evidence of guilt, and the fact that the subject of photographs originated with Bayer, all combine to minimize prejudice to Bayer.

From our analysis of the effect of the court's inadvertent reference to two cause numbers (ISSUE ONE) and our treatment of the "mug file" testimony, it should be apparent that there is no merit to Bayer's claim that a combination of these two events denied him a fair trial.

ISSUE THREE.

CONCLUSION—It is our opinion that the manner of questioning witnesses by the Prosecutor did not prevent Bayer from receiving a fair trial.

The trial of this case was marked by numerous objections to questions asked by both defense counsel and the Prosecutor.

According to Bayer's count, his defense counsel objected ten times to leading questions during the course of the trial. In comparison, we find thirty-five objections by the state in the 200-page transcript. As the trial court pointed out when the defense counsel asked for an admonishment of the prosecution because of improper questioning, "Well, I think counsel on both sides are somewhat guilty of that." The admonishment sought by Bayer was made by the court.

In this context Bayer's anguished cry is that the prosecutor consistently and unrelentingly asked leading questions which forced defense counsel into the position of either

making frequent objections or allowing improper testimony into evidence. No specific improper testimony is designated.

*Sylvester* v. *State* (1933), 205 Ind. 628, 187 N.E. 669, is the sole citation in support of Bayer's somewhat vague claim of harm arising from the prosecutor's conduct of persistently asking leading questions. *Sylvester* is easily distinguished in that the prosecutor's misconduct consisted of asking leading questions which assumed highly prejudicial facts not in evidence. Bayer makes no such claim in the case before us and in fact many of the questions objected to when rephrased were acceptable.

The trial judge is in charge of the conduct of questioning during the trial and control thereof is within his discretion. *Muehlman* v. *Keilman* (1971), 257 Ind. 100, 272 N.E.2d 591, and cases cited therein. See also, *Dale* v. *Trent* (1970), 146 Ind. App. 412, 256 N.E.2d 402.

Absent any showing that the cumulative effect of such questioning was to place before the jury assumed facts prejudicial to Bayer he has not been harmed and the trial judge acted within his discretion.

ISSUE FOUR.

CONCLUSION—It is our opinion that sufficient evidence was introduced to support a conclusion that an "article of value" was taken during the robbery.

Bayer was convicted under Indiana's robbery statute, IC 1971, 25-13-4-6, Ind. Ann. Stat. § 10-4101 (Burns 1956 Repl.) which provides in pertinent part:

> "Whoever takes from the person of another any *article of value* by violence or by putting in fear, is guilty of robbery . . ." (Emphasis supplied)

Bayer seeks to bolster his argument that value must be proven with the case of *Burrows* v. *State* (1894), 137 Ind.

474, 37 N.E. 271. *Burrows* involved a conviction for larceny. As such, it was necessary to prove the value of the property alleged to have been stolen in order to determine the grade of the offense and the penalty to be imposed. There is no such requirement in the robbery statute; therefore, *Burrows* is inapplicable.

Indiana cases have held that it is unnecessary to allege or prove the value of the object taken in a robbery prosecution. See: *Adams* v. *State* (1970), 254 Ind. 509, 260 N.E.2d 878; *Webster* v. *State* (1973), 155 Ind. App. 510, 293 N.E.2d 529.

Similarly worded statutes in other connections have been held not to require a proof of value. See: *Sweet* v. *State* (1941), 218 Ind. 182, 31 N.E.2d 993; *Worl* v. *State* (1962), 243 Ind. 116, 183 N.E.2d 594.

The rule is similar in other jurisdictions. In *State* v. *Alvis* (1935), 116 W. Va. 326, 180 S.E. 257, the court upheld an indictment for robbery which merely stated that one rifle, one watch and a flashlight had been taken. The court stated that the indictment was sufficient without a statement of value because, "we know as men that some value attaches to a rifle, watch and flashlight. The amount of that value is not material." Other jurisdictions have found that terms such as "article of value" or "valuable thing" are synonymous with "property." See: *Howell* v. *State* (1931), 184 Ark. 109, 40 S.W.2d 782; *Stokes* v. *State* (1961), Okla. Crim., 366 P.2d 425.

Further, it will be remembered that the defendant's own exhibit showed that blank checks had been taken during the robbery. Blank checks have likewise been held to be an "article of value." *State* v. *Miller* (1971), 113 N. J. Super. 1, 272 A. 2d 539.

There was evidence before the jury from which it could reasonably infer that the gun stolen was an article of value.

The gun was a .32 calibre Colt revolver. It was loaded and apparently working. Lt. Tandy testified that he had bought a gun similar to the one taken in the robbery and that it cost $65. This evidence more than satisfied the requirement of the robbery statute.

Therefore it is our opinion that it is clear that there was substantial evidence of probative value from which the jury could reasonably infer that an article of value had been taken during the robbery.

As it appears that Bayer was not denied a fair trial, and that there was sufficient evidence to support his conviction, the decision of the lower court is hereby affirmed.

White, J. and Sullivan J., concur.

NOTE.—Reported at 303 N.E.2d 678.