HENRY LEE PHILLIPS *v.* STATE OF INDIANA

[No. 2-876A297. Filed November 16, 1977.]

---

*Harold Kohlmeyer*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Lesly Ann Bowers*, Deputy Attorney General, for appellee.

## CASE SUMMARY

BUCHANAN, J. — Defendant-Appellant Henry Phillips (Phillips) appeals from the convictions of the crimes of Attempt to Commit a Felony While Armed (Rape)[1] and Assault & Battery with Intent to Kill,[2] claiming insufficiency of the evidence, prosecutorial misconduct, and that improper remarks were made about his past criminal record.

We affirm.

## FACTS

The evidence most favorable to the State is:

On July 20, 1975, Barbara Wilkins,[3] a woman sixteen years of age, awakened at 4:00 A.M. to find an intruder in her bedroom holding a knife to the back of her neck. Although he threatened to kill her if she did not take off her clothes, she began screaming. The intruder panicked and tried to flee down a flight of stairs where he encountered Wilkins' parents. A scuffle ensued and Wilkins' father was stabbed in the stomach. The assailant then fled.

Her mother (Mrs. Wilkins) was taken to police headquarters where, after viewing a bulletin board filled with pictures, she immediately identified Phillips, a frequent visitor of a neighbor, as the assailant.

At trial the following exchanges took place:

1. IND. CODE § 35-12-1-1.

2. IND. CODE § 35-1-54-3.

3. Wilkins is not the victim's true name.

PROSECUTOR: And what happened then after you came downtown?

MRS. WILKINS: Well, when I came downtown, I, she told us, all she said to my husband and Barbara and I, all three of us, was I want to get a statement in your own words, what happened and so we each of us began to tell what happened, but my husband and my daughter said that they could not identify Henry Lee Phillips and she said well, would you look at some mug shots, well, everybody went in there to look, and I was the only one that went straight to his picture.

Phillips moved for a mistrial, which was denied, and proceeded on cross-examination to probe further in this area:

DEFENSE
COUNSEL: You also stated, and then you kinda stopped and went back, you said something like you saw a picture of Mr. Phillips and you were asked if you could identify him, is that—

MRS. WILKINS: No, no. I had picked him out before Alice Parnell even said anything about his record or his name or anything.

Subsequently Officer Alice Parnell was called to testify and in respones to the following question:

PROSECUTOR: What did she say when she saw the picture?

OFFICER
PARNELL: She just said, that's him, and so I looked and got his gallery, got his name and, you know, seen who he was.

At that point, Phillips moved for a mistrial claiming the statements of Mrs. Wilkins and Officer Parnell were evidentiary harpoons. That motion was denied. Subsequently, one of Phillips' own witnesses testified about Phillips' sentencing for an earlier crime.

During the State's rebuttal of Phillips' final argument which dwelt on the fact no knife was presented as evidence, the Prosecutor responded by saying:

PROSECUTOR: The Defense seems to have made an issue out of the fact that we have no knife to show you here today. I believe it's been shown through Barbara that she could feel it at the back of her neck, through Mr. [Wilkins], who was stabbed twice in the stomach, Mrs. [Wilkins], who saw him bleeding profusely, the fact that he went to the hospital and was treated for stab wounds, all would go to the fact that there was a knife, that there was a deadly weapon used during the commission of these crimes. Just because Henry Lee Phillips decided to take it (the knife) with him or throw it in a corner or do something else with it is not the issue here. *We don't know what happened to the knife, only the defendant would know what happened to that knife if we have proven these charges beyond a reasonable doubt.* The knife is not an element to be presented into evidence, the facts that we have shown through our testimony that there was a knife held at the back of Barbara's neck through her testimony, she stated this, and through Mr. [Wilkins] testimony was the knife was used to stab him in the stomach, he told us that. (emphasis supplied)

Again, Phillips moved for a mistrial, which was denied by the trial judge.

## ISSUE

Phillips raises three issues:

1. Was there sufficient evidence to sustain the conviction?

2. Did the comments of the victim's mother and Officer Parnell constitute evidentiary harpoons?

3. Did the Prosecutor make an improper comment upon Phillips' failure to take the stand?

Phillips initially contends that there is insufficient evidence to prove that he intended to rape the victim or stab the victim's father. Secondly, he argues the Prosecutor introduced "evidentiary harpoons", through remarks by the State's witnesses about Phillips' "record", "gallery", and "mug shots". He alleges these references placed before the jury the fact that he had been convicted of a prior crime, a fact inadmissible at trial.

His final contention is that the Prosecutor improperly referred to the fact that he had not taken the witness stand in his own defense in his closing argument, thereby violating his constitutional right against self incrimination.

## DECISION

### Issue One

CONCLUSION—There was sufficient evidence to sustain the conviction.

In determining Phillips' intent to rape or kill the jury may consider direct and indirect evidence establishing beyond a reasonable doubt the existence of such intent. *Washington v. State* (1971), 257 Ind. 40, 271 N.E.2d 888.

There is both direct evidence and reasonable inferences therefrom establishing intent to commit rape and intent to kill.

Phillips was an uninvited intruder into Wilkins' bedroom at 4:00 in the morning, ordered her to undress at knife-point and threatened to kill her if she screamed.

The facts of this case are similar to those of other rape convictions in which the perpetrator was prevented from consummating the act for a variety of reasons. *See Curry v. State* (1969), 252 Ind. 347, 248 N.E.2d 30; *Jester v. State* (1975), 163 Ind. App. 24, 321 N.E.2d 762; *Charles v. State* (1975), 164 Ind. App. 356, 328 N.E.2d 455.

Similarly, we find there was sufficient evidence to sustain the conviction of Assault and Battery with Intent to Kill. Phillips

assaulted Wilkins' father with a knife in attempting to escape and inflicted a knife wound in the stomach. These facts are somewhat analogous to those in *Green v. State* (1973), 158 Ind. App. 591, 304 N.E.2d 845, in which a defendant while trying to avoid apprehension by an off duty policeman tried to run over one of the officers with his automobile. Judge Sullivan, for the majority, said:

> It thus appears that the meager authority available in other jurisdictions supports conviction for assault and battery with intent to kill even though the intent exemplified by the act, as here, is indicative of an intent to escape apprehension and arrest rather than a specific intent to actually kill the person or persons obstructing the escape path. 304 N.E.2d at 852.

Issue Two

CONCLUSION — Testimony by Officer Alice Parnell and Mrs. Wilkins regarding Phillips' gallery, mug shots, and record, did not constitute evidentiary harpoons under the circumstances of this case.

In *Bayer v. State* (1973), 158 Ind. App. 531, 303 N.E.2d 678, 683, this Court dealt with evidentiary harpoons observing that "one emerges from a careful reading of *White v. State* (1971), 257 Ind. 64, 272 N.E.2d 312, with the firm conviction that intent to prejudice is a prime consideration in determining whether a given and proper statement constitutes reversible error." In that case, we noted there was a lack of intent to prejudice and strong evidence of guilt. And so it is here.

Mrs. Wilkins' reference to mug shots was in response to the questions asked and does not appear to have been deliberately calculated to prejudice Phillips. Nor would the reference by Officer Parnell to the word "gallery" prejudice Phillips, a term only familiar to those intimately acquainted with procedures in the Indianapolis Police Department.

Eyewitnesses testified to Phillips' guilt.

Further, one of Phillips' own witnesses testified that she had attended a prior sentencing of Phillips and thus put in the mind of the jurors the fact that he had a previous record.

Thus, it cannot be concluded that Phillips was denied a fair trial.

Issue Three

CONCLUSION — Any reference by the Prosecutor in his rebuttal argument to Phillips' failure to take the stand is too remote to justify reversal.

The prohibition against comments made by a Prosecutor was given constitutional dimension in *Griffin v. California* (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, and a similar prohibition was adopted in Indiana through IND. CODE § 35-1-31-3 and a long line of Indiana cases. *See Knopp v. State* (1954), 233 Ind. 435, 120 N.E.2d 268; *Rowley v. State* (1972), 259 Ind. 209, 285 N.E.2d 646.

We are aware of the statement in *Rowley v. State, supra,* that:

> *A comment* made by a prosecuting attorney, *directly or indirectly, which is subject to interpretation by a jury as a comment upon the failure of the defendant to testify* has been strictly regarded as an impingement upon the substantial right of the defendant. (emphasis supplied)

But does indirectly mean we must strain to find such an allusion when none is apparent?

The decided Indiana cases requiring reversal have been founded on such statements as "there had not been one bit of evidence from the witness stand that indicated the defendant was not guilty." *See Rowley, supra*; or "would have been pleased to hear from the other side", or ". . . if a party has something to say they are going to say it" and, "they're not going to rest on their laurels". "But you haven't had any evidence — any testimony from the stand about why or why not somebody might not have had this property . . . What evidence have you heard from the stand with regard to any explanation of the evidence you have heard from the State." *Bland v. State* (1973), 158 Ind. App. 441, 303 N.E.2d 61; *Edwards v. State* (1975), 164 Ind. App. 304, 328 N.E.2d 470. No Indiana cases have gone so far as to find that a responsive comment about the disposition of a weapon used by a defendant being

within his knowledge, as constituting a comment on the defendant's failure to take the stand. This comment is not a sly, indirect attempt to comment on the forbidden subject. It goes beyond the realm of the indirect into the realm of the remote. There is no reference to the stand or Phillips' failure to testify. The comment can not reasonably be interpreted as a touching of the forbidden fruit. It is merely a comment on the evidence prompted by defense counsel's comment on the evidence. *See Crane v. State* (1973), 157 Ind. App. 319, 299 N.E.2d 877.

Furthermore, the statement was made in the context of a response to defense counsel's attempt to discredit the State's failure to produce the knife, and is somewhat comparable to the situation in *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843, in which the Court observed that:

> However, in this case appellant himself injected the subject of his own silence under the trial. The prosecutor merely repeated the remark which defense counsel had made . . . . 355 N.E.2d at 849.

We affirm.

White, J. dissents with opinion.

Lybrook, J. (by designation) concurs.

### DISSENTING

WHITE, J.—I do not agree with part III of the majority opinion which holds that a remark made by the prosecutor in his rebuttal argument is "too remote to justify reversal," nor do I agree that the remark was invited.

When the prosecutor, in his final argument, told the jurors that "only the defendant would know what happened to that knife" he certainly reminded them that the defendant had not testified. They may even have understood it as a broader implication that defendant did not take the stand because he could not testify without incriminating himself. At any rate, his statement qualified as an impermissible comment on Phillips' failure to testify in his own behalf under the test laid down by the Indiana

Supreme Court in *Rowley v. State* (1975), 259 Ind. 209, 213, 285 N.E.2d 646, 648: "A comment made by a prosecuting attorney, directly or indirectly, *which is subject to interpretation* by a jury as a comment upon failure of a defendant to testify has been strictly regarded as an impingement on the substantial rights of the defendant." (My emphasis.)

The Indiana Supreme Court adopted the *Rowley* test from *Williams v. Wainwright* (CA 5, 1969), 416 F.2d 1042, preferring it to a "strict test" laid down in *United States ex rel. Leak v. Follette* (CA 2, 1969), 418 F.2d 1266, 1269, and saying, "We prefer the test which does not in such an obvious fashion place the burden on the accused to show that the jury *necessarily* took the comment to be related to his failure to take the stand." The *Rowley* court made this choice even though it held that the comment then before it was impermissible "[u]nder either of these tests." Thus the majority opinion errs in suggesting that because the prosecutor's remark here was not as direct a reference as in *Rowley* to defendant's failure to testify it does not meet the *Rowley* test. *Rowley* itself says that the prosecutor's remark need not be that direct. It need only be direct enough that it "is subject to interpretation by the jury as a comment upon failure of a defendant to testify." Certainly this comment was *subject to* that interpretation regardless of whether one guesses the jury did or did not so interpret it.

To suggest, as does the majority opinion, that if the prosecutor's remark is error it is nevertheless excusable because it was invited, is to say that whenever a defendant's attorney tells the jury that the State has offered no evidence on some facet of the case he considers significant to the question of whether the State has proved its case, he thereby invites the prosecutor to reply that the defendant could have supplied the answer. Were that true the attorney for a defendant who had not testified could never argue that the State had failed to prove some material element of its case beyond a reasonable doubt without subjecting his client's silence to prosecutorial comment. I am aware of no authority for attaching such a condition to legitimate final argument.

The case of *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843, 848, attaches no such condition. There the defendant's attorney, in his closing argument, went beyond arguing that the State had failed to prove its case and embarked upon an attempted justification of defendant's failure to testify. Referring to a State's witness, he said:

> " 'And they want you to take his word against Abel Maldonado's. Abel Maldonado didn't testify. The law says to keep that out of your mind. You can't do it. You can't go back in that jury room and forget that Abel Maldonado did not testify. As hard as you try, you can't do it. What does he have to testify for? It's not his burden. He doesn't have to prove anything to you.' " (355 N.E.2d at 848.)

Thus, as the court noted "appellant himself injected the subject of his own silence into the trial". (Ibid.) In the case at bar, however, Phillips' attorney's argument that the State had failed to produce the knife was not a reference to Phillips' silence. The prosecutor injected that subject when he charged that only Phillips knew where the knife was.

I would reverse and remand with instructions to grant a new trial.

NOTE—Reported at 369 N.E.2d 434.