Donald RICHEY, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 1280S442.

Supreme Court of Indiana.

Oct. 6, 1981.

Mark W. McNeely, McNeely & Sanders, Shelbyville, for appellant (defendant below).

Linley E. Pearson, Atty. Gen. of Indiana, Kathleen G. Lucas, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

HUNTER, Justice.

Donald Richey was convicted by a jury of two counts of burglary, a class B felony, and one count of burglary, a class C felony, Ind.Code § 35–43–2–1 (Burns 1979 Repl.), as well as three counts of theft, a class D felony, Ind.Code § 35–43–4–2 (Burns 1979 Repl.). He was sentenced to the Indiana Department of Corrections for two terms of sixteen years, one term of seven years, and three terms of four years, respectively. The court ordered that the terms run concurrently.

In his direct appeal, defendant raises the following issues for our review:

1. Whether the trial court erred when it permitted the state to place in evidence a statement made by defendant in the presence of police;

2. Whether the trial court erred when it permitted the state to place in evidence a "mug shot" of the defendant;

3. Whether the trial court erred when it permitted the state to place in evidence proof of a separate and distinct crime;

4. Whether the trial court erred when it failed to heed defendant's request to admonish the jury to disregard particular statements made by the prosecutor during final argument;

5. Whether the trial court erred when it refused to give various final instructions tendered by defendant;

6. Whether the trial court erred when it permitted the jury to deliberate in the courtroom rather than in the jury's chambers; and

7. Whether the trial court erred when it sentenced defendant for each count of theft, which were included offenses of the burglaries.

The record reveals that on the evening of March 4, 1980, property was stolen from three separate residences in a rural area of Shelby County, Indiana. That evening, a resident of the area observed an automobile occupied by four people in the vicinity of one of the burglarized homes. Because the conduct of the occupants aroused her suspicions, she made a written note of the license plate number. When word of the burglaries reached her the following day, she reported the license number to the police. The subsequent police investigation culminated in defendant's arrest and the convictions at issue.

I.

Defendant contends the trial court erred when it permitted the state to place in evidence a statement he had made in the presence of police officers. Therein, he related to police officers that he had fenced two guns and a pair of binoculars which had been taken in the burglaries; the statement did not include an express admission that defendant had participated in the burglaries.

■ Initially, we note the state briefly asserts that the defendant's statement does not fall within the parameters of Ind.Code § 35–5–5–1 *et seq.* (Burns 1979 Repl.), which, together with constitutional guarantees, governs the admissibility of confessions and self-incriminating statements. The unexplained possession of stolen property, although insufficient by itself to support a conviction, is circumstantial evidence of an offense against property. *Sansom v. State,* (1977) 267 Ind. 33, 366 N.E.2d 1171; *Boyd v. State,* (1977) Ind.App., 370 N.E.2d 939; *Parsons v. State,* (1973) 159 Ind.App. 160, 304 N.E.2d 802. Defendant's incriminating statement thus fell within the provisions of Ind.Code § 35–5–5–5 (Burns 1979 Repl.), which defines those statements governed by Ind.Code § 35–5–5–1 *et seq., supra.*

Defendant's assertion that his incriminating statement was inadmissible is predicated on two bases. He maintains the statement was involuntarily made as a result of

his illegal detention. In addition, he argues he was under the influence of drugs at the time the statement was made and that, consequently, it was not the product of his free will.

█ It is, of course, well settled that the state has the burden of proving beyond a reasonable doubt that a defendant's statement was voluntarily made. *Morris v. State*, (1980) Ind., 399 N.E.2d 740; *Rodgers v. State*, (1979) Ind., 385 N.E.2d 1136. *See also, Brown v. Illinois*, (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416. It is equally well settled that in our review of a trial court's ruling on the admissibility of a confession or incriminating statement, this Court cannot weigh the evidence or judge the credibility of witnesses. Rather, we must examine the evidence most favorable to the state, together with the reasonable inferences which can be drawn therefrom. If, from that viewpoint, there is substantial evidence to support the court's conclusion, it will not be set aside. *Combs v. State*, (1978) 267 Ind. 578, 372 N.E.2d 179; *Riggs v. State*, (1976) 264 Ind. 263, 342 N.E.2d 838.

Pursuant to Ind.Code § 35–5–5–1, *supra*, the trial court conducted a hearing outside the presence of the jury to determine the voluntariness and admissibility of defendant's statement. The record of the hearing reveals that at approximately 4:30 p. m. on March 25, defendant was arrested in Decatur County for a theft unrelated to the offenses at issue. He was detained in that county's jail. The arrest, made pursuant to a warrant, was executed by State Police Detective John Oldham, who was investigating burglaries in a six-county area embracing both Shelby and Decatur Counties. According to Oldham, defendant was advised of his rights, informed of the Decatur County offense which had prompted his arrest, and told he was also a suspect in the investigation of Shelby County burglaries.

The record reveals defendant was not taken before a magistrate on the Decatur County theft charge until March 27, at which time counsel was appointed for him. Meanwhile, the previous day—March 26—defendant had requested an opportunity to talk with Detective Oldham. The request and resulting conversation between the two occurred at approximately noon and was witnessed by Charles "Mike" Herndon, a detective with the Shelby County Sheriff's Department who was investigating the string of burglaries in that jurisdiction. The conversation was not tape-recorded or transcribed. Oldham indicated that if he made any notes of the conversation, the memoranda "had probably been thrown away." Herndon stated his notes were "on my rough field report and then it was dictated." No written notes, summaries, or records of the conversation were admitted at the hearing.

It is uncontradicted that at the outset of the meeting, Oldham again advised defendant of his *Miranda* rights. Oldham could not remember whether he asked defendant to sign a waiver of his rights; at any rate he testified defendant did not sign a written waiver. Neither Herndon nor Oldham asked defendant if he was under the influence of drugs; both indicated he acted normally and appeared rational.

The record reveals a paucity of information concerning the conversation itself. There is no evidence regarding its duration or format, with the exception of the following colloquies between the state and the police officers. Oldham testified as follows:

MR. LINDER: "Now did you use any force to get him to speak with you?"
WITNESS: "I did not."
MR. LINDER: "Did you use any threats?"
WITNESS: "No."

Similarly, Herndon testified:

MR. LINDER: "Was any force used to make him talk?"
WITNESS: "No, sir, this interview was at his request."
MR. LINDER: "Any threats?"
WITNESS: "No, sir."
MR. LINDER: "Any promises made to him if he talked?"
WITNESS: "No."

The record reveals nothing regarding the substantive matters discussed during the

meeting beyond those statements heretofore delineated and the fact that defendant admitted he had fenced property taken in the Shelby County burglaries.

 We are enamored neither of the police conduct nor the state's approach to its burden of proof in the instant case. Defendant was detained in the Decatur County Jail for a period somewhere between forty and forty-eight hours before he was taken in front of a magistrate. As Chief Justice Givan explained in *Pawloski v. State*, (1978) 269 Ind. 350, 358, 380 N.E.2d 1230, 1234:

> "There is a heavy responsibility placed upon state officials to bring an arrestee before a neutral and detached magistrate without undue delay. An arrestee must be brought before a magistrate for a probable cause determination within 24 hours of being placed in custody except where Sunday intervenes, in which case the arrestee can be detained no longer than 48 hours. IC § 18–1–11–8 [Burns 1974]. A delay in bringing an arrestee before a magistrate will not render a confession inadmissible if the judge finds the delay to be reasonable and the confession voluntary."

Notwithstanding the state's "heavy responsibility," it presented no evidence to explain its failure to take defendant, who was arrested on Tuesday, before a magistrate until Thursday.

The state's failure to explain the reason for the extended detention flies in the face of Ind.Code § 35–5–5–3 (Burns 1979 Repl.), upon which defendant relies. Contemplated in the statute is a determination by the trial judge whether a delay in presenting a defendant to a magistrate beyond six hours from the arrest is "reasonable." Ind.Code § 35–5–5–3, *supra* :

> "In any criminal prosecution by the state of Indiana, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law enforcement officer or law enforcement agency, shall not be inadmissible solely because of the delay in bringing such person before a judge if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention:
>
> *"Provided, That the time limitation contained in this section shall not apply in any case in which the delay in bringing such person before a judge beyond such six-hour period is found by the trial judge to be reasonable, considering the means of transportation and the distance to be traveled to the nearest available judge."* [Emphasis added.]

Notwithstanding the emphasized statutory language, the state has presented us with a record which reveals no apparent reason for the failure to take defendant before a magistrate for approximately forty to forty-eight hours.

 The burden of the state to prove it has discharged its "heavy responsibility" should not lightly be disregarded. Both the United States Supreme Court and this Court have recognized the inherently coercive nature of custodial surroundings. *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Blackburn v. Alabama*, (1960) 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242; *Chambers v. Florida*, (1940) 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; *Fortson v. State*, (1979) Ind., 385 N.E.2d 429; *Pawloski v. State, supra; Williams v. State*, (1976) 264 Ind. 664, 348 N.E.2d 623. As the Court explained in *Miranda* :

> "An individual swept from familiar surroundings into police custody, surrounded by antagonistic forces, and subjected to the techniques of persuasion described above cannot be otherwise than under compulsion to speak. As a practical matter, the compulsion to speak in the isolated setting of the police station may well be greater than in courts or other official investigations, where there are often impartial observers to guard against intimidation or trickery." 384 U.S. at 461, 86 S.Ct. at 1620–2, 16 L.Ed.2d at 716.

The advisement of rights necessary to protect a suspect's Fifth Amendment rights is a function which, inherently, is more effectively discharged by a neutral and detached magistrate. To paraphrase Justice DeBruler, if a member of the Police Department does not take any steps to present a suspect to a magistrate for an advisement of rights, it is unlikely the officer has any interest in being certain the suspect actually understands the nature of those rights. *Williams v. State, supra.* That inference is aggravated when, as here, the police testify that they are unable to recall whether a written advisement of rights and waiver form was tendered to defendant prior to the conversation.

In the absence of evidence to the contrary, the detention of defendant for the period of forty to forty-eight hours without presenting him to a magistrate was illegal. Ind.Code § 35–5–5–3, *supra;* Ind.Code § 18–1–11–8, *supra; Gerstein v. Pugh,* (1975) 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54; *Pawloski v. State, supra; Williams v. State, supra.* But while prolonged and illegal detention might, in particular circumstances, preclude the admission of a confession or incriminating statement, such is not the case here.

We conclude from the record that defendant's statement was not the product of his illegal detention. He was twice advised of his constitutional rights and his statement, which followed from his request to talk with Oldham, occurred within twenty hours of the arrest. Although cursorily presented, the evidence reveals no indication the statement was induced by force, fear, or promises.

Defendant's contention that he was under the influence of drugs at the time he made the statement was undercut by his own testimony. He testified he was taking Darvaset at the time he was confined in the Decatur County Jail; by the time of the hearing, his prescription had been changed to Norgesic. Defendant testified the latter drug was a stronger medication, yet stated he was able to understand what was happening at the hearing. The milder prescription medication which he was taking at the time of his detention cannot be said by this Court to have rendered his statement involuntary. *Layton v. State,* (1973) 261 Ind. 251, 301 N.E.2d 633.

In these circumstances, the trial court's conclusion that defendant's statement was voluntarily made was not erroneous. Ind. Code § 35–5–5–2 (Burns 1979 Repl.); *Pawloski v. State, supra; Hill v. State,* (1979) Ind., 390 N.E.2d 167. The trial court did not err when it admitted the self-incriminating statement.

II.

Defendant maintains the trial court erred when it permitted the state to introduce a colored photograph of himself. The photograph was taken by police the day defendant was arrested, booked, and incarcerated at the Shelby County Jail. The "mug shot," as Police Officer Herndon described it at trial, depicted a frontal pose of defendant from the waist up, and bore the legend "Shelby County," as well as a six digit "I.D. Number," a second identification code composed of seven figures, and the numerical date, "03–28–80." The photograph was admitted over defendant's objections of "materiality," "relevancy," and "Additionally, we don't need mug shots ever in this Court."

"Mug shots" are generally inadmissible in Indiana for the potential prejudice to defendants which is engendered by the admission of the photographs. *Gray v. State,* (1978) 268 Ind. 177, 374 N.E.2d 518; *Blue v. State,* (1968) 250 Ind. 249, 235 N.E.2d 471; *Fox v. State,* (1980) Ind.App., 399 N.E.2d 827. The general proscription is based on the feared influence the photographs, which tend to prove or imply a defendant has a criminal record, might have on the jury. *Gray v. State, supra.* The respect accorded the general rule is significant; our courts have extended the ban to include even verbal references to "mug shots" of defendants in police files. *Fox v. State, supra; Bayer v. State,* (1973) 158 Ind.App. 531, 303 N.E.2d 678. Still, where

it has been established that photographs have independent probative value and the state has attempted to minimize any prejudicial effect, it has been recognized that the photographs may be admitted. *Gray v. State, supra; Fox v. State, supra.*

We note the photograph at issue bears a significant difference from a "mug shot" as classically defined. The photograph did not include a side view of the defendant, nor did the photograph have its origins in prior criminal records or police "mug shot" files. The police inscription at the bottom revealed the date the photograph was taken, and so indicated nothing insofar as prior criminal activity is concerned.

 That is not to say, however, that the photograph was admitted in proper form. Prior to the admission of the photograph, Officer Herndon testified the photograph had been taken at the time defendant was arrested, booked, and incarcerated. Consequently, it was not necessary that the informational inscription at the bottom of the photograph be included in the exhibit; since the inscription had no independent probative value, that portion of the photograph need not and should not have been revealed to the jury. Through redaction, the state could have minimized any potential prejudice from the inscription, which, in its cryptic nature, lent an aura to the photograph not relevant to the purpose for which it was admitted.

That purpose was to depict the differences in defendant's appearance at trial from his appearance at the time of the burglary and arrest. A witness to the burglary had provided police with descriptions of the participants; the photograph corroborated the description of Richey's appearance at that time.

The photograph consequently had substantial evidentiary value independent of other evidence. *Gray v. State, supra; Fox v. State, supra.* In addition, the court admonished the jury that the photograph was "no evidence of any kind whatsoever" of guilt. We find no reversible error in the admission of the photograph and its inscription.

### III.

 Defendant next argues the trial court erred when it permitted the state to introduce evidence that he was facing theft charges in Decatur County. The record reveals, however, that defendant did not interpose an objection to the testimony when it was initially solicited. Any claim of error has consequently been waived. *Norton v. State*, (1980) Ind., 408 N.E.2d 514; *Lagenour v. State*, (1978) 268 Ind. 441, 376 N.E.2d 475.

### IV.

 Defendant maintains the trial court erred when, during arguments to the jury, it permitted the state to comment on the participation of defendant's brother in the burglaries. The record does not include the transcript of the parties' arguments to the jury, however. Defendant's failure to tender a record adequate to permit review of this issue constitutes a waiver of the claimed error. *Holmes v. State*, (1980) Ind., 398 N.E.2d 1279; *State v. Irvin*, (1973) 259 Ind. 610, 291 N.E.2d 70.

### V.

Defendant maintains the trial court erred when it refused to give various final instructions tendered by him. Those instructions refused by the court include his tendered instructions numbered 1, 3, 4, 5, 6, 7, and 8.

 A three-part test is employed to determine whether a trial court has erred in its refusal to give a tendered instruction:

"In considering whether any error results from refusal of a tendered instruction we must determine: (1) whether the tendered instruction correctly states the law, *Gayer v. State*, (1965) 247 Ind. 113, 210 N.E.2d 852; (2) whether there is evidence in the record to support the giving of the instruction, *Wathen v. State*, (1965) 246 Ind. 245, 204 N.E.2d 526; (3) whether the substance of the tendered instruction is covered by other instructions which are given, *Hash v. State*, (1972) 258 Ind. 692,

284 N.E.2d 770; *New v. State,* (1970) 254 Ind. 307, 259 N.E.2d 696; *Cockrum v. State,* (1968) 250 Ind. 366, 234 N.E.2d 479." *Davis v. State,* (1976) 265 Ind. 476, 478, 355 N.E.2d 836, 838.

With this test in mind, we turn to the merits of defendant's contentions.

■ Defendant's tendered instruction number 1 reads in its entirety:

"At common law a convict was incompetent as a witness, however, under our code, it was felt that justice required that such material witnesses should be competent, and that convictions and all other matters effecting creditability [sic] could be shown for the consideration of the jury. Ordinarily testimony of such witnesses may be considered by the jury along with any evidence that a witness may have been threatened, bribed, or influenced to secure his testimony.

"An accomplice who turns 'state's evidence' and agrees to 'cooperate' with the State with consideration of leniency or the dismissal of charges by the State, to be realistic, is being bribed, regardless of the fact that public policy has approved such action in the interest of effective law enforcement. It does not necessarily follow that because of inducements offered to the accomplice his testimony. [sic] It is, however, highly suspect. Because of the pressure of such undue influence upon the witness in such cases, the jury should have the evident [sic] relating thereto. Such type of influence naturally impairs the creditability [sic] of such a witness."

The language contained in the instruction was drawn from *Newman v. State,* (1975) 263 Ind. 569, 334 N.E.2d 684.

The substance of defendant's instruction was adequately covered by other instructions given by the court. The trial court gave the following instructions concerning the weight to be accorded an accomplice's testimony, the latter of which was tendered by defendant:

"An accomplice is one who, with criminal intent, acts with others and participates in the commission of a crime. Under the laws of the State of Indiana, an accomplice is competent as a witness for the state in the trial of a criminal case. The evidence of an accomplice is to be received and weighed by the jury in the same manner and according to the same rules as the evidence of any other witness.

\* \* \* \* \* \*

"In this state, a defendant may be found guilty solely on the evidence of a confessed accomplice. Because human nature would tend to cause accomplices to 'unload' against their partners in their desire to clear themselves as much as possible of blame for a crime, such testimony should be closely scrutinized by the jury or factfinder. Such fact finding body should have before it all the relevant circumstances that caused or induced such witness to testify, including rewards for such testimony, if any."

We find no error here. *Davis v. State, supra.*

■ Defendant's tendered instruction 3 delineated the law of this jurisdiction regarding probable cause for warrantless arrests. Defendant, however, was arrested pursuant to a bench warrant issued by the court upon its determination of probable cause. The instruction was properly refused as inapplicable to the issues, confusing and misleading. *Carter v. State,* (1977) 266 Ind. 196, 361 N.E.2d 1208; *Hackett v. State,* (1977) 266 Ind. 103, 360 N.E.2d 1000.

Defendant's tendered instruction 4 reads: "You are further instructed that the defendant, Donald Richey, is not on trial for any acts alleged to have been committed outside Shelby County."

Both in preliminary and final instructions, the court instructed the jury of the charges against Richey at issue in the trial. The substance of this instruction was adequately covered by other instructions. *Davis v. State, supra.*

Defendant's tendered instructions 5 and 8 embraced the "presumption of innocence" which the jury was required to accord defendant. That topic was adequately cover-

ed by various instructions which defined and detailed the presumption of innocence and reasonable doubt standard of proof. The trial court did not err. *Davis v. State, supra.*

Defendant's tendered instruction 6 reads:

"You are further instructed that the defendant in this cause has filed, pursuant to law, his Notice of Alibi.

"This was filed and served upon the prosecuting attorney before the start of this case.

"The Notice included specific information in regard to the exact place at which the defendant was the time of the commission of the offenses charged against the defendant."

The subject matter of the instruction was adequately and more appropriately explained by the following instructions given by the court:

"You are instructed that the defendant in this case has filed a Notice of Alibi and offered evidence to prove that, at the time of the alleged offense, the defendant may have been at a place other than the places where the alleged offense occurred.

\* \* \* \* \* \*

"In criminal law, 'alibi' means 'elsewhere' or 'in another place.' It is a mode of defense to a criminal prosecution where the party accused, in order to prove he could not have committed the crime with which he is charged, offers evidence to show that he was in another place at the time the alleged crime was committed. This is a legitimate and proper defense and evidence relative thereto has been offered from the witness stand on behalf of the defendant. This evidence should be considered by you along with and in the light of all the other evidence in the case, giving it such weight and credence as you believe it warrants; and, after such consideration, should the evidence of alibi create a reasonable doubt in your minds as to the guilt of the defendant on any one or more of the offenses charged, then you should find the defendant not guilty of such offense or offenses."

These instructions were tailored to the evidence and alibi issue before the jury. The trial court did not err in refusing defendant's instruction 6. *Davis v. State, supra.*

■ Defendant's tendered instruction 7 contained information regarding his right to a speedy trial. That issue was not before the jury for its determination. The instruction was properly refused. *Carter v. State, supra; Hackett v. State, supra.*

## VI.

■ Defendant next argues the trial court erred when it permitted the jury to conduct its deliberations in the courtroom, rather than the jury room. He specifically argues that in the courtroom setting, the jury may have been exposed to exhibits, diagrams, and evidence not admitted during the trial.

The record reveals the courtroom was employed because the air conditioning system in the courthouse was broken. The courtroom, with greater air circulation than the smaller jury room, provided the most comfortable setting for the jurors. The jury foreman testified at the hearing on defendant's motion to correct errors that none of the jury members examined anything which had not been presented as evidence at trial.

The requirement of Ind.Code § 35–1–37–4 (Burns 1979 Repl.) that jury deliberations be conducted in a "private" place should be scrupulously observed. The circumstances present here, by virtue of the foreman's testimony, clearly satisfied the requirement. There was no error here.

## VII.

Defendant next maintains the trial court abused its discretion in sentencing defendant. He argues the trial court violated the constitutional prohibition against double jeopardy when it sentenced him for both his burglary and theft convictions. That argument has been specifically rejected by this Court in *Elmore v. State,* (1978) 269 Ind. 532, 382 N.E.2d 893.

He also maintains his sentence was unreasonable in light of the sentences received by his co-defendants. In light of defendant's extensive criminal record, however, it cannot be said the trial court abused its discretion in imposing a harsher punishment on defendant. App.Rev.Sen. Rule 2; *Clay v. State*, (1981) Ind., 416 N.E.2d 842; *McChristian v. State*, (1979) Ind., 396 N.E.2d 356.

For all the foregoing reasons, the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.