**Otis COLEMAN, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 884S316.**

Supreme Court of Indiana.

March 27, 1986.

Robert Garrett, Public Defender, 2293 North Main, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

This is a direct appeal from convictions entered after a jury trial for rape, a class A felony, Ind.Code § 35–42–4–1, attempted rape, a class A felony, Ind.Code §§ 35–42–4–1, 35–41–5–1, and two counts of robbery, a class C felony, Ind.Code § 35–42–5–1. Appellant Otis Coleman was also found to be an habitual offender. Ind.Code § 35–50–2–8. The judge imposed concurrent sentences of fifty years (rape), fifty years (attempted rape), and eight years for each robbery conviction. The attempted rape conviction was enhanced by an additional thirty years based on the habitual offender finding.

Appellant raises two issues in this appeal:

1) Whether there was sufficient evidence of threatening the use of deadly force, one element of proof in a rape trial, and

2) Whether the trial court erred in failing to grant a mistrial based upon use of the term "mug shot" by a state witness.

These are the facts which tend to support the trial court's judgment. On the evening of October 27, 1983, D.S. and F.J. were walking to the latter's home, where the girls planned to spend the night. While they were en route, appellant approached the girls from behind and attempted to grab F.J.'s purse. When she resisted, Coleman demanded money, told the girls he had a gun, and gestured with his hand inside his jacket pocket to indicate the presence of a gun. Neither victim saw a gun. Coleman told the girls not to try anything or he would kill them.

Coleman directed the girls into the back yard of an abandoned, boarded-up house, where he instructed them to disrobe. D.S. testified that they did so "because he threatened to kill us." Appellant also demanded that they remove their jewelry. The girls were further instructed to lie on the ground and engage in oral sex with each other while appellant examined their possessions for valuables. Then, lowering

his pants, appellant asked the girls, "which one of you should I get now?" He knelt on the ground between D.S.'s legs preparing for intercourse until she told him that she had a venereal disease. Apparently losing interest, appellant told her if she tried anything, he would kill her. He then approached F.J., who submitted to sexual intercourse with appellant because he had warned her that he was armed and would kill her. Appellant took the girls' jewelry and fled.

The victims returned to D.S.'s home and the police were summoned. The girls had observed their attacker by the light of a nearby street light. In addition, both recalled seeing him at Nick's Liquor Store earlier in the summer, but neither knew him by name. A description was given to Officer Conner, who advised that F.J. receive a medical examination. The examination revealed an external tear of the vagina, an injury not uncommon in a rape. Later tests confirmed the presence of blood and semen in the vagina.

The following afternoon, the girls went to the police station to view a photographic array. Each independently identified appellant Coleman as the man who had attacked her the night before.

## I. Sufficiency of the Evidence

Appellant challenges the sufficiency of the evidence on the element of threatening the use of deadly force to sustain a conviction for rape. In reviewing the sufficiency of the evidence, we do not weigh the evidence nor resolve questions of credibility, but look to the evidence and reasonable inferences therefrom which support the verdict. The conviction will be affirmed if there is evidence of probative value from which a reasonable trier of fact could infer guilt beyond a reasonable doubt. *Ramos v. State* (1984), Ind., 467 N.E.2d 717, 718.

The evidence showed that appellant told the girls that he had a gun, gestured with his hand inside his jacket pocket to indicate the presence of a gun, and threatened to kill the girls if they did not comply with his demands. F.J. submitted to sexual intercourse because she was in fear for her life.

In his brief, appellant concedes that the testimony shows that Coleman threatened to kill the girls.

Appellant alleges that threats to kill the victims coupled with the victims' subjective belief that the defendant was armed is insufficient to show a threat to use deadly force. However, "a weapon need not be displayed in order to establish the threat of deadly force." *Zollatz v. State* (1980), 274 Ind. 550, 554, 412 N.E.2d 1200, 1202. Further, this Court has held that the threat that the defendant was armed and would kill the victim was sufficient to support a conviction of rape by threatening the use of deadly force. *Ross v. State* (1982), Ind., 429 N.E.2d 942; *Tillman v. State* (1980), 274 Ind. 39, 408 N.E.2d 1250. Under the facts of this case, the evidence is sufficient to support a conviction of rape.

## II. Denial of Mistrial

During the prosecution's direct examination of Sergeant Murray, a twenty-year veteran of the police force, the following colloquy occurred:

Q. Prior to that, were each shown photographs in an effort to identify who was responsible for what they said happened to them?

A. Yes, they were.

Q. How was this done?

A. The way our system is set up with police photographs, we have them under heighth (sic), race, age, and after having the description given to me, I pulled the mugshots—I'm sorry, the police photographs out and gave each girl a group of photographs.

The defendant moved for a mistrial, which was denied. The defendant then requested that the jury be admonished. This request was granted, and the jury was immediately admonished to disregard the witness' reference to mug shots.

The appellant now argues that the court's denial of his motion for mistrial was reversible error, and that such error was not cured by the subsequent admonish-

ment. It is well established that the trial court has discretion in ruling on a motion for mistrial. That discretion will be disturbed only if the defendant was placed in position of grave peril to which he should not have been subjected, or if the prosecution deliberately attempted to prejudice the defendant. *Morgan v. State* (1981), 275 Ind. 666, 668, 419 N.E.2d 964, 967; *White v. State* (1971), 257 Ind. 64, 78, 272 N.E.2d 312, 320.

 Generally, admission of evidence of prior criminal history is error unless the defendant puts his character into issue. Because a mug shot may be indicative of prior criminal history, its admission is prejudicial to the defendant. *Blue v. State* (1968), 250 Ind. 249, 254, 235 N.E.2d 471, 472. However, a mug shot is admissible if it has independent probative value, or if evidence of the defendant's prior criminal history is admitted. *Dziepak v. State* (1985), Ind., 483 N.E.2d 449; *Hovis v. State* (1983), Ind., 455 N.E.2d 577.

Similarly, the use of the term mug shot in testimony may be prejudicial to the defendant. However, the mere mention of the term mug shot is not reversible error *per se.* Reversal is not required if the reference in unintentional or evidence of guilt is strong. *Phillips v. State* (1977), 174 Ind.App. 570, 575, 369 N.E.2d 434, 437; *Bayer v. State* (1973), 158 Ind.App. 531, 540, 303 N.E.2d 678, 684.

In this case, the use of the term mug shot, though made by an experienced police officer, was inadvertent. In fact, the witness attempted to correct his own misstatement. There was no deliberate attempt by the prosecution to elicit the term. It was used in response to a general question regarding police procedures, which had been called into question during cross examination of the victims on the topic of their independent identifications. The term did not refer to any particular mug shot of the defendant, but referred to the general category of photos used in a photographic array. Further, there was substantial evidence of the defendant's guilt already before the jury.

The trial court was well within its discretion in concluding that the defendant was not placed in a position of grave peril requiring a mistrial. When the jury is admonished to disregard evidence, the trial court's refusal to grant a mistrial is not error. *Tinnin v. State* (1981), 275 Ind. 203, 206, 416 N.E.2d 116, 118. *Smith v. State* (1978), 270 Ind. 1, 3, 382 N.E.2d 937, 939.

The judgment is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.